## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM BURRIS, | : |
| | : **CASE NO.: 2:16-cv-00543** |
| PLAINTIFF, | : |
| | : **THE HONORABLE GENE E.K. PRATTER** |
| v. | : |
| | : **ELECTRONICALLY FILED** |
| SAINT CHARLES BORROMEO | : |
| ROMAN CATHOLIC | : |
| SEMINARY AND MAIN LINE | : |
| HEALTH SYSTEM, | : |
| | : |
| DEFENDANTS. | : |

---

## MEMORANDUM OF LAW IN SUPPORT OF SAINT CHARLES BORROMEO ROMAN CATHOLIC SEMINARY'S MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) AND (6)

---

Submitted By:

**OBERMAYER REBMANN
MAXWELL & HIPPEL, LLP**

By:   /s/ Paige Macdonald-Matthes, Esquire
      Thomas A. Leonard, Esquire
      Attorney ID No. 14781
      Paige Macdonald-Matthes, Esquire
      Attorney ID No. 66266
      200 Locust Street, Suite 400
      Harrisburg, PA  17101
      (717) 221-1609 Telephone
      (717) 234-9734 Facsimile
      *Attorneys for Defendant, Saint
      Charles Borromeo Roman Catholic
      Seminary*

5018257

# **TABLE OF CONTENTS**

Table of Authorities ................................................................iii

I.      PRELIMINARY STATEMENT ..................................................2

II.     STATEMENT OF PROCEDURAL HISTORY AND FACTS ...................4

        A. Procedural History ..................................................4

        B. Factual Allegations .................................................8

III.    ISSUES PRESENTED ...............................................16

IV.     LEGAL ARGUMENT ...............................................17

        A. LEGAL STANDARD FOR FED. R.CIV. P. 12(B)(1)
           MOTION ..................................................17

              1.  Motion To Dismiss The Complaint Pursuant To  Rule
                  12(b)(1) As the Plaintiff Has No Standing ...................18

              2.  Motion To Dismiss The Complaint Pursuant To Rule
                  12(B)(1) Because Of A Parallel Pending State Court
                  Action (Abstention ..................................21

        B. LEGAL STANDARD FOR A FED.R.CIV.P. 12(b)(6)
           MOTION ..................................................23

              1.  Motion to Dismiss Count II of Plaintiff's Complaint
                  Pursuant to Rule 12(b)(6) For Failure to State a Claim
                  for "Aiding and Abetting Breach of Fiduciary Duty" .................24

              2.  Motion to Dismiss Count VIII of Plaintiff's
                  Complaint Pursuant  to Rule 12(b)(6) For Failing To
                  State a Claim for Civil Conspiracy ................................31

              3.  Motion to Dismiss the Count for "Constructive Trust
                  and  Permanent Injunctive Relief" Pursuant to Rule

12(b)(6) As Being Contrary to Law and Fails to State a Claim ...........................................................................35

4.  Motion to Dismiss Count X (Permanent Injunction) Pursuant to Rule 12(b)(6) For Failing to Plead an Entitlement To Any Injunction .......................................................38

5.  Motion to Dismiss Plaintiff's Claim for Punitive Damages Pursuant to Rule 12(b)(6)...............................................41

V. CONCLUSION……………………………………………………………….43

5019867

## TABLE OF AUTHORITIES

Abraxis Bioscience, Inc. v. Navinta LLC, 625 F.3d
    1359 (Fed. Cir. 2010)........................................................18

Allen v. Wright, 468 U.S.737, 752 (1984) ............................19

Alpart v. Gen. Land Partners, Inc., 574 F. Supp. 2d
    491, 506 (E.D. Pa. 2008) ................................................32

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1951, 173
    L. Ed. 2d 868 (2009).........................................23, 24, 29

Ayers v. Osram Sylvania, Inc., 2008 U.S. Dist.
    LEXIS 72644, (M.D.Pa. 2008)........................................23

Basile v. H&R Block, Inc., 777 A.2d 95, 101 (Pa.
    Super. Ct. 2001)...............................................................24

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ..........23, 24

Boring v. Google, Inc., 362 F. App'x 273 (3d Cir.
    2010) ................................................................................41

Brayman Const. Corp. v. Penn Dep't of Transp., 13
    A.3d 925, 935 (Pa. 2011)................................................39

Bro-Tech Corp. v. Thermax, Inc., 651 F. Supp. 2d
    378, 419 (E.D. Pa. 2009) ................................................33

Chester v. Chester Redevelopment Authority, 686
    A.2d 30, 35 (Pa. Cmwlth. 1996)..................................38, 40

Chrysler Credit Corp. v. B.J.M. Jr., Inc., et al., 834 F.
    Supp. 813 (E.D. Pa. 1993) ..............................................21

Cohen v. Pelagatti, 528 A.2d 657, 658 (Pa. Super. Ct.
    1987) ................................................................................35

iii

Colorado River Water Conservation District v.
    United States, 424 U.S. 800, 96 S. Ct. 1236, 47
    L. Ed. 2d (1976) ........................................................................21, 23

Commerce Bank/Pennsylvania v. First Union Nat.
    Bank, 911 A.2d 133, 143 ..............................................................32

Corneal v. Jackson Twp., 313 F. Supp. 2d 457 (M.D.
    Pa. 2003) ......................................................................................31

DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352
    (2006) ...........................................................................................19

Daniel Boone Area School District v. Lehman Bros.,
    Inc., 187 F.Supp. 2d 400 (W.D. Pa. 2002) ...................................28

Devon IT, Inc. v. IBM Corp., 805 F. Supp. 2d 110,
    129-30 (E.D. Pa. 2011) .................................................................25

D.G. v. Somerset Hills Sch. Dist., 559 F. Supp. 2d
    484, 491 (D.N.J. 2008) .................................................................17

Doltz v. Harris & Assoc., 280 F.Supp. 2d 377, 389
    (E.D. Pa. 2003) .......................................................................33, 34

Duffy v. Lawyers Title Ins. Co., 972 F. Supp. 2d 683,
    698 (E.D. Pa. 2013) ......................................................................32

Erie Operating, LLC v. Foster, No. 14-72, 2015 U.S.
    Dist. LEXIS 138312 (W.D. Pa. Aug. 13, 2015) ...........................22

eToll, Inc. v. Elias/Savion Advertising, Inc., 811
    A.2d 10, 23 (Pa. Super. 2002) ......................................................24

Fahnestock v. Reeder, 223 F. Supp. 2d 618, 621
    (E.D. Pa. 2002) .............................................................................17

Feld v. Merriam, 485 A.2d 742, 747-48 (Pa. 1984) ...............................41

Fowler v. UMPC Shadyside, 578 F.3d 203, 210 (3d
    Cir. 2009) ............................................................................29

Golden Triangle News, Inc., v Corbett, 689 A.2d
    974, 978 (Pa. Cmwlth. 1997)........................................40

Gould Elecs. Inc. v. United States, 220 F. 3d 169,
    176 (3d Cir. 2000).............................................................17

Grose v. Procter  Gamble Paper Products, 866 A.2d
    437 (Pa. Super. 2005) ...........................................34, 35

Huber v. Wagner, 284 Pa. Super. 133, 425 A.2d 456,
    458 (Pa. Super. Ct. 1981) ............................................36

In re Burlington Coat Factory Sec. Litig., 114 F.3d
    1410, 1426 (3d Cir. 1997) ..............................................4

In re Corestates Trust Fee Litig., 837 F. Supp. 104,
    105 (E.D. Pa. 1993) ........................................................18

In re Rockefeller Center Properties, Inc. Sec. Litig.,
    184 F.3d 280, 287 (3d Cir. 1999) ................................4

Invest Almaz v. Temple-Inland Forest Products
    Corporation, 243 F.3d 57, 82-83 (1st Cir.
    2001) .....................................................................................28

Jean Alexander Cosmetics, Inc. v. L'Oreal USA,
    Inc., 458 F.3d 244, 256 n.5 (3d Cir. 2006) ...............4

KBT Corp. v. Ceridian Corp., 966 F. Supp. 369, 373
    (E.D. Pa. 1997) .................................................................21

Keene Corp. v. United States, 508 U.S. 200, 207
    (1993)....................................................................................18

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406
    (3d Cir. 1991)....................................................................19

Kolbeck v. LIT America, Inc., 939 F.Supp. 240, 247
    (S.D.N.Y. 1996)..................................................................................29, 31

Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Cmwlth.
    2003).................................................................................................28

Landau v. Western Pennsylvania Nat. Bank, 282
    A.2d 335, 339 (Pa. 1971)...................................................................33

LARA, Inc. v. Dorney Park Coaster Co., 116 Pa.
    Cmwlth. 548, 542 A.2d 220 (Pa. Cmwlth.
    1988).................................................................................................40

Lerario v. Provident Life and Accident Ins. Co., No.
    CIV A. 96-2100, 1996 U.S. Dist. LEXIS
    13671, (E.D. Pa. Sept. 20, 1996) ......................................................36

Levin v. Upper Makefield Twp., 90 F. App'x 653,
    667 (3d Cir. 2004)..............................................................................32

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61
    (1992).......................................................................................18, 19, 20

Macauley v. Estate of Nicholas, 7 F. Supp. 3d 468,
    478 n.7 (E.D. Pa. 2014) ......................................................................4

Miles Farm Supply, LLC v. Helena Chemical
    Company, 595 F.3d 663, 666 (6th Cir. 2010) ...................................28

Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d
    884, 891 (3d Cir. 1977) ......................................................................17

Nationwide Mut. Fire Ins. Co. v. George V.
    Hamilton, Inc., 571 F.3d 299, 307 (3d Cir.
    2009)...........................................................................................21, 22

O'Boyle v. Braverman, No. 08-3865, 337 Fed. App'x
    162, 165 (3d Cir. July 15, 2009)..........................................................4

Official Committee of Unsecured Creditors of
 Allegheny Health Education and Research
 Foundation v. PriceWaterhouseCoopers, LLP,
 605 Pa. 269, 989 A.2d 313, 327 n.14 (Pa.
 2010) ...................................................................................28

Petula v. Mellody, 588 A.2d 103, 107 (Pa. Cmwlth.
 1991) ..............................................................................33, 34

Phillips v. County of Allegheny, 515 F.3d 224, 231
 (3d Cir. 2008)........................................................................2

Reis v. Barley, Snyder, Senft & Cohen, LLC, 484
 F.Supp.2d 337, 350-352 (E.D.Pa. 2007) ......................28

Santiago v.Warminster Township, 629 F.3d 121, 130
 (3d Cir. 2010)......................................................................24

Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) .............................................4

Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D.
 Pa. 1997) ............................................................................32

Tegg Corp. v. Beckstrom Elec. Co., 2008 U.S. Dist.
 LEXIS 52184 (W.D.Pa. 2008)......................................23

Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466,
 472) (Pa. 1979) .........................................................32, 33, 34

Toll Bros., Inc. v. Twp. of  Readington, 555 F.3d
 131, 138 (3d Cir. 2009) ...................................................18

Valley Forge Convention & Visitors Bureau v.
 Visitor's Servs., Inc., 28 F. Supp. 2d 947, 953
 (E.D. Pa. 1998) ..................................................................25

Varnberg v. Minnick, 760 F. Supp. 315 (S.D.N.Y.
 1991) ...................................................................................31

5019867

Weaver v. Franklin County, 918 A.2d 194 (Pa.
   Cmwlth. Ct. 2007) ......................................................................................32

Yang v. Tsui, 416 F.3 199, 204 n. 5 (3d Cir. 2005)................................................21

Yohe v. Yohe, 353 A.2d 417 (Pa. 1976)................................................................37

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 8(a)(2) .........................................................................................24

Fed. R. Civ. P. 9(b) .............................................................................................30

Fed. R. Civ. P. 12(b)(1)...................................................................................3, 16,
                                                                                      17, 18,
                                                                                          21

Fed. R. Civ. P. 12(b)(6).....................................................................................2, 3,
                                                                                       16, 23,
                                                                                       29, 31,
                                                                                       35, 35

Fed. R. Civ. P. 17 ................................................................................................20

## I.   PRELIMINARY STATEMENT[1]

In this action against Defendant, Saint Charles Borromeo Catholic Seminary (hereinafter "St. Charles") and Main Line Health Systems (hereinafter "Main Line"), Plaintiff William Burris (hereinafter "Plaintiff or "Burris") alleges that he had been in negotiations with St. Charles for the purchase of St. Charles' Property located in Lower Merion Township, Pennsylvania and that in the midst of those discussions between Plaintiff and St. Charles, Plaintiff invited Main Line to participate in the process and they [Plaintiff and Main Line] formed a "partnership" or "joint venture" of some kind to pursue the acquisition of the Parcel.[2] Plaintiff further alleges that Main Line thereafter engaged in "secret negotiations with St. Charles and ultimately reached an agreement of sale with St. Charles to permit Main Line to purchase the Parcel from St. Charles," thus supporting his purported claims against St. Charles for aiding and abetting breach of fiduciary duty, civil conspiracy, constructive trust, and permanent injunctive relief.

---

[1] For the purposes of a motion filed pursuant to Fed.R.Civ.P. 12(b)(6), the Court must accept the factual allegations contained in the Complaint as true. *See e.g*., Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Nothing contained in these moving papers shall be construed as an admission by St. Charles of any such allegations.

[2] St. Charles respectfully requests that this Honorable Court take judicial notice of the fact that the Pennsylvania Department of State, Corporation Bureau website reveals that there is no such partnership between Burris and Main Line registered to do business in the Commonwealth of Pennsylvania. *See* https://www.corporations.pa.gov/search/corpsearch.

St. Charles moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because the Plaintiff lacks the necessary standing to bring the above captioned matter, and further because the same matter is currently pending in the Court of Common Pleas, Montgomery County.  St. Charles also moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to set forth the threshold facts required to prove any of the claims raised in Counts II, VIII, IX, and IX [sic] against St. Charles.  Moreover, documents authored by Plaintiff and Plaintiff's counsel and filed in both courts belie the claims raised by Plaintiff in the Complaint regarding the existence of any partnership between Plaintiff and Main Line Health, let alone the existence of any partnership that St. Charles was made aware of by Plaintiff.  Finally. St Charles moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)  because the Plaintiff has no plausible cause of action of his own against St. Charles.

For the reasons stated herein and more fully described below, St. Charles respectfully requests that this Honorable Court dismiss the Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6).

5018257

## II.   STATEMENT OF PROCEDURAL HISTORY AND FACTS

### A.   <u>Procedural History</u>

On December 21, 2015, Plaintiff and William Burris Construction Company (hereinafter <u>collectively</u> "BCC") filed a Writ of Summons against the Defendants named in the above captioned matter in the Court of Common Pleas, Montgomery County at C.C.P Docket No. 2015-32594 ("State Court Action").[3]  *See* Exhibit "A" attached hereto.[4] On even date, BCC filed a *lis pendens* against Saint Charles' real property located in Lower Merion Township, Montgomery County, Pennsylvania.

---

[3] A Court may consider a document that is not attached to the complaint without converting the motion to dismiss to a motion for summary judgment where "the claims in the complaint are based on an extrinsic document[.]" *See* <u>Schmidt v. Skolas</u>, 770 F.3d 241, 249 (3d Cir. 2014); *see also* <u>In re Rockefeller Center Properties, Inc. Sec. Litig.</u>, 184 F.3d 280, 287 (3d Cir. 1999) (holding that a district court may, on a motion to dismiss, "consider a 'document integral to or explicitly relied upon in the complaint.'" (*quoting* <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997))). In addition, when "resolving a motion under Federal Rule of Civil Procedure 12(b)(6) or 12(c), 'a court may properly look at public records, *including judicial proceedings*, in addition to the allegations in the complaint.'" <u>Macauley v. Estate of Nicholas</u>, 7 F. Supp. 3d 468, 478 n.7 (E.D. Pa. 2014) (*quoting* <u>Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.</u>, 458 F.3d 244, 256 n.5 (3d Cir. 2006)) (emphasis added). Relevant state court documents from related proceedings are included within this ambit. <u>O'Boyle v. Braverman</u>, No. 08-3865, 337 Fed. App'x 162, 165 (3d Cir. July 15, 2009) ("[I]t was not improper for the District Court to take judicial notice of Tennessee court documents in deciding the Rule 12(b)(6) motion at issue.").

Here, there are three categories of documents that this Court may consider without converting this motion to dismiss into a motion for summary judgment: (1) documents upon which claims in Mr. Burris' complaint are based; (2) documents explicitly relied upon by Mr. Burris; and (3) Pennsylvania state court documents that are a matter of the public record, having been filed in the Court of Common Pleas for Montgomery County. St. Charles respectfully requests the Court to take judicial notice of the State Court documents.

[4] This document is a matter of public record.  St Charles attached this document as Exhibit "A" to its Motion for Injunction on January 8, 2016 and is located at docket entry 7.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

4

Within the *lis pendens* counsel for BCC certified (albeit erroneously) to the State Court that "[the] action involves a dispute and request for determination of true ownership interests in and to this Property in an action currently pending in the Court of Common Pleas, Montgomery County, Pennsylvania." A true and correct copy of the December 21, 2015  *lis pendens* is attached hereto as Exhibit "B".[5],[6]

On December 22, 2015, BCC's counsel prepared a document captioned "Notice of Pre-Complaint Discovery Pursuant to Rule 4007.1(c) and Notice of Pre-Complaint Request for Production of Documents Pursuant to Rule 4007.1(d)(1) ("Discovery Notice"), a true and correct copy of which is attached as Exhibit "D".[7] Included in the Notice was a brief statement in which it is certified that (a) [The Parties] had "[begun] to discuss **the possibility** of BCC acquiring [a 41.1 acre parcel of land owned by St. Charles located at 100 East Wynnewood Road,

---

[5] The Deed referenced within BCC's *lis pendens*  is a hand written Deed dated December 23, 1911 between The Most Reverend Edmond F. Prendergast, Archbishop of Philadelphia and The Philadelphia Theological Seminary of Saint Charles Borromeo, recorded in the Montgomery County Recorder of Deeds Office at 667-196, a true and correct copy of which is attached hereto as Exhibit "C". As is evidenced by public records available in the Montgomery County Recorder of Deeds Office, the Property is and remains titled in St. Charles' name as of the date that BCC's counsel certified that "[the state court] action involves a request for true ownership interests in and to this Property" (*See* Exhibit "B"), and further continues to remain titled in the name of St. Charles as of the date of the filing of the within Motion.

[6] This document is a matter of public record.  St Charles attached this document as Exhibit "B" to its Motion for Injunction on January 8, 2016 and is located at docket entry 7.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

[7] This document is a matter of public record.  St Charles attached this document as Exhibit "D" to its Motion for Injunction on January 8, 2016 and is located at docket entry 7.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

5018257

Wynnewood Pennsylvania 19096, having a Montgomery County Parcel Identification Number of 40-00-67932-00-5, defined as the "Parcel"] to purchase and/or lease the Parcel for development and operation of a planned skilled nursing facility; (b) in the midst of the discussions between BCC and St. Charles, BCC invited Main Line to participate in the potential purchase, and they [BCC and Main Line] formed a partnership <u>to pursue the acquisition of the Parcel</u> and (c) Main Line engaged in "secret negotiations with [St. Charles] and ultimately reached an agreement of sale with [St. Charles] to permit Main Line to purchase the Parcel from [St. Charles]." (Emphasis added).

On January 8, 2016, St. Charles filed an "Emergency Motion for Preliminary Injunctive Relief and Additional Relief In The Form of Declaratory Judgment" ("Motion for Injunction") in response to Burris' State Court Action. On January 13, 2016, counsel for BCC filed an "Amended *Lis Pendens*" that certified to the State Court, in relevant part, as follows:

> Plaintiffs do not intend this Praecipe to preclude or  effect any sale or other transaction that does not involve the Main Line Entities and others as set forth herein, and Plaintiffs agree that entities other than Main Line Entities and others set forth herein may purchase or acquire all or any portion of the Real Property referenced in this Praecipe without such purchase or acquisition being subject to any claim of Plaintiffs in this lawsuit.  The Praecipe to Enter Lis Pendens filed in this action on December 21, 2015 is hereby amended and restated as set forth herein.

6

*See* Exhibit "E" attached hereto.[8]

Oral argument on St. Charles' Motion for Injunction was held on January 15, 2016 before the Honorable Bernard A. Moore.  On January 19, 2016, the State Court issued an Order striking off Burris' *lis pendens*.  *See* Exhibit "F" attached hereto.[9] On January 22, 2016, the trial court issued a second Order relating to St. Charles' Motion for Injunction directing the Court Administrator to "relist the same for one-half day on the equity emergency list."  *See* Exhibit "G" attached hereto.[10]

On February 3, 2016, BCC filed a "Praecipe to Discontinue" the State Court action.  *See* Exhibit "H" attached hereto.[11] On the same date, Plaintiff, William Burris (hereinafter "Plaintiff" or "Burris") individually filed the above captioned Complaint before this Honorable Court.  Document No. 1.

On February 10, 2016, St. Charles filed its "Petition to Strike Plaintiffs/Respondents' Praecipe to Discontinue and/or Imposition of Sanctions

---

[8] This document is a matter of public record.  Plaintiff filed this pleading on January 13, 2016 and is located at docket entry 12.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

[9] This document is a matter of public record and is located at docket entry 23.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

[10] This document is a matter of public record and is located at docket entry 28.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

[11] This document is a matter of public record and is located at docket entry 30.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

5018257

against Plaintiffs/Respondents" ("Petition to Strike") in the State Court Action.  On February 16, 2016, the State Court issued a Rule to Show Cause why St. Charles' Petition to Strike should not be granted, <u>with a Rule Return date of March 14, 2016</u>. *See* Exhibit "I" attached hereto.[12] (Emphasis added).  Thus, St. Charles' Petition to Strike is still pending final adjudication by the Trial Court as of the date and time of the filing of the within Motion.

Counsel for the Parties in the above captioned matter participated in a Rule 26 conference call on February 10, 2016 per Order of Court, and a Joint Rule 26 Report was faxed to the Court on February 17, 2016.  On February 10, 2016, the undersigned counsel sent a Rule 11 letter to Plaintiff's counsel.  As of the date and time of the filing of the within Motion, no response to said Rule 11 letter has been received from Plaintiff's counsel.

Finally, Counsel for the Parties participated in an Initial Conference on February 19, 2016.  Initial Disclosures were exchanged by counsel for the Parties on February 26, 2016.

### B.    Factual Allegations

St. Charles is the legal owner of property located at 100 Wynnewood Road in Lower Merion Township (the "Property").  The Property consists of approximately 71.7 acres located between Wynnewood Road and Lancaster

---

[12] This document is a matter of public record and is located at docket entry 35.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

Avenue in Wynnewood, Pennsylvania.  Since the 1870's, the Property has been generally used as a site for theological studies to prepare students for the priesthood.  *See* Declaration of Stephen P. Dolan, Jr., Chief Financial Officer of St. Charles ¶1, attached hereto as Exhibit "J".

In or around the fall of 2013, St. Charles determined that it wished to subdivide and sell a portion of the Property known as the "Lower Campus" which is comprised of an existing three-story, 305,500 square foot seminary and educational residence, the Saint Martin Chapel, and a historic Bell Tower on approximately 41.1 acres (the "Parcel").  *See* Declaration of Stephen P. Dolan, Jr. ¶3.[13]   Between November 2013 and December 2015, St. Charles met with multiple prospective buyers for the Parcel who were specifically vetted and registered by St. Charles' exclusive broker, Holliday Fenoglio Fowler, L.P., ("HFF") and from whom St. Charles and HFF received signed "Confidentiality and Conditions Offering Agreements" (hereinafter "Confidentiality Agreement"), including one signed by Burris on behalf of BCC on November 7, 2013.  *See* Exhibit "K" attached hereto.[14]   At no time was any potential purchaser ever advised that they were in "exclusive" negotiations with St. Charles. *See* Declaration of Stephen P.

---

[13] *See also*, Complaint ¶16.

[14] This document is a matter of public record.  St Charles attached this document as Exhibit "F" to its Motion for Injunction on January 8, 2016 and is located at docket entry 7.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

Dolan, Jr. ¶7.  To the contrary, the Confidentiality Agreement specifically provides as follows:

> [Plaintiff] acknowledges that the Property has been offered for sale subject to the withdrawal of the Property from the market at any time or rejection of any offer because of terms thereof, or for any reason whatsoever, without notice, as well as the termination of discussions with any party at any time without notice for any reason whatsoever.

*See* Exhibit K at ¶6.

On October 29, 2014, BCC submitted on Burris Construction letterhead its response to the St. Charles Buyer Qualification Questionnaire ("BQQ"), copies of which are attached to Burris's Complaint as Exhibit "1" and to this Memorandum as  Exhibit L.[15]  Main Line Health is not identified as a party to the Burris Construction Company BQQ.  Rather, in response to St. Charles' question, "what decision maker(s) from your organization and equity source(s) have visited the Property," Burris Construction Company represents "William G. Burris, Jr., William G. Burris, III, and Kevin Breslin have visited the project on a number of occasions and no other property visits will be required prior to our commitment to purchase." Finally, in response to the St. Charles' question, "How many other deals are you currently working on," Burris Construction Company represents:

---

[15] Burris explicitly relies upon the BQQ in his Complaint.  *See* Complaint, ¶¶ 29, 30, 34, 35.

5018257

"Finally, we are negotiating the finer points of a partnership with Main Line health [sic] in our pursuit of the instant proposal.[16]

On or about November 24, 2014, St. Charles (at the special insistence and request of HFF, as well as St. Charles' Board Members) requested that BCC provide it with additional financial statements/documentation in light of concerns that St. Charles had with BCC's previously submitted financial information. Neither Burris nor BCC ever provided the requested financial information.  *See* Affidavit of Stephen P. Dolan, Jr. ¶8.  Instead, BCC sent HFF a proposed Letter of Intent ("LOI") on or about December 26, 2014, a true and correct copy of which is attached hereto as Exhibit "M".[17]  St. Charles did not accept BCC's offer.  *See* Declaration of Stephen P. Dolan, Jr. ¶8.

Burris alleges in his Complaint that "because [Defendant] Main Line was (and is) an owner of the land adjacent to the Parcel, Burris was encouraged by unnamed members of St. Charles Board of Directors to meet with Main Line and its President, John 'Jack' Lynch III ("Lynch"),'" and that in furtherance of said

---

[16] In paragraph 35 of his Complaint, Burris quotes from the addendum to the BQQ wherein BCC proposes to retain the existing seminary building "in partnership with Main Line Health." That addendum does not purport to alter the admission in the body of the BQQ that it has not yet reached an agreement with Main Line Health.

[17] This document is a matter of public record.  St Charles attached this document as Exhibit "G" to its Motion for Injunction on January 8, 2016 and is located at docket entry 7.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

request Burris met with Lynch in June 2014.[18]  Burris further alleges in his

Complaint that it was immediately following this meeting in June 2014 that

"Burris and Main Line then became co-promoters of a partnership/joint

venture/confidential relationship to acquire the Parcel for purposes of building and

operating a post-acute care center on the Parcel,"[19] (despite the fact that the BQQ

clearly states in relevant part "we are negotiating the finer points of a partnership

with Main Line Health in our pursuit of the instant proposal,"[20]  and further despite

Burris' admission in his Complaint ¶70 that "the parties were unable to create any

potential relationship to proceed in the development envisioned by the parties in

the Burris-Main Line Fiduciary Venture"). (Emphasis added).

While Burris alleges in his Complaint that a partnership with Main Line had

been formed and that St. Charles was aware of said alleged partnership,[21] the

documents prepared by Burris and submitted to St. Charles belie these contentions.

Specifically, on June 23, 2015, Burris sent a letter to St. Charles on "Atrium Health

and Senior Living" ("Atrium") letterhead.  In his letter, Burris represented himself

for the first time to St. Charles as "Co-CEO/Chairman of Atrium Health & Senior

Living," rather than as representative of BCC. *See* Declaration of Stephen P.

---

[18] *See* Complaint ¶¶20, 23.

[19] *See* Complaint ¶26.

[20] *See* Complaint Exhibit 1, page 13, last sentence.

[21] *See* Complaint ¶28.

Dolan, Jr. ¶12. A true and correct copy of the June 23, 2015 letter is attached

hereto as Exhibit "N."[22]  In his letter, Burris specifically states as follows:

> **Burris Construction Company merged with Atrium Health & Senior Living <u>in August 2014</u>**.  My family converted 80% equity in Burris to 20% equity in Atrium. The resulting company has a solid operating history of healthcare centers for 29 years and, of course, significant development expertise in that area.

*See* <u>Id</u>.  (Emphasis added).

The June 23, 2015 letter from Burris reflects that Burris was making an offer

for the Parcel as an agent of Atrium Health & Senior Living not Burris

Construction Company.[23] Moreover,  the letter is void of <u>any reference whatsoever</u>

<u>to a purported partnership with Main Line</u>. *See* <u>Id</u>.

According to Burris on July 17, 2015, "[he] offered $25,000,000.00 to

acquire the Parcel from the Seminary to pursue the project for the Burris-Main

Line Fiduciary Venture."[24] The  July 17, 2015 letter is on "Atrium Health"

letterhead and Burris signed the same as "Co-CEO/Chairman Atrium Health &

Senior Living." *See also* Declaration of Stephen P. Dolan, Jr. ¶¶12, 14. Again, the

---

[22] This document is a matter of public record.  St Charles attached this document as Exhibit "K" to its Motion for Injunction on January 8, 2016 and is located at docket entry 7.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

[23] *Compare* Exhibit "K" wherein Burris represented to St. Charles and HFF that he was only representing BCC pursuant to the terms of paragraph 4 of the Confidentiality Agreement.

[24] *See* Complaint ¶ 48.  This letter is explicitly relied upon by the Plaintiff in his Complaint.

July 17, 2015 letter from Burris <u>makes no reference to a purported partnership with</u> <u>Main Line</u>.  A true and correct copy of the July 17, 2015 letter is attached hereto as Exhibit "O." [25]

Burris avers that when he did not receive word on the pending offer that he wrote to Bishop Timothy Senior ("Senior"), the Rector of St. Charles via email dated December 4, 2015.[26] As evidenced by the December 4, 2015 email correspondence attached hereto as Exhibit "P"[27] (and sent from Burris' email account at Atrium), Burris made no reference to the existence of a partnership with Main Line and instead stated, "I understand that <u>one of my competitors</u> may be the new stalking horse for this deal." (Emphasis added).

On or about December 11, 2015, St. Charles advised BCC, through Burris, that it was in a period of exclusive discussion with Main Line.[28]  *See* Declaration of Stephen P. Dolan, Jr.¶12.  Shortly thereafter, and on December 21, 2015, BCC filed a Writ of Summons against St. Charles and Main Line Health Systems and a

---

[25] This document is a matter of public record.  St Charles attached this document as Exhibit "L" to its Motion for Injunction on January 8, 2016 and is located at docket entry 7.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

[26] *See*  Complaint ¶60.

[27] Burris' Affidavit, together with its attachments is a matter of public record.  BCC attached this document as Exhibit "A" to its Reply in Opposition to St. Charles' Motion for Injunction on January 14, 2016 and is located at docket entry 15.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

[28] *See* Complaint ¶61.

*Lis Pendens* against St. Charles in the Court of Common Pleas, Montgomery

County.[29]

---

[29] As previously stated herein in Procedural History, BCC subsequently withdrew its State Court
Action on the same day Burris filed the above captioned action.

III.   **ISSUES PRESENTED**

    A. **SHOULD PLAINTIFF'S COMPLAINT BE DISMISSED DUE TO PLAINTIFF'S LACK OF STANDING AND FURTHER DUE TO THE FACT THAT THE SAME CASE IS STILL PENDING IN THE COURT OF COMMON PLEAS, MONTGOMERY COUNTY, PA, PURSUANT TO FED. R.CIV.P. 12(B)(1)?**

    *Suggested answer in the affirmative.*

    B. **SHOULD PLAINTIFF'S COMPLAINT BE DISMISSED BASED ON PLAINTIFF'S FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED.R.CIV.P. 12(B)(6)?**

    *Suggested answer in the affirmative.*

16

## IV.  LEGAL ARGUMENT

### A.  <u>LEGAL STANDARD FOR A FED.R.CIV.P. 12(b)(1) MOTION</u>

A motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. <u>Gould Elecs. Inc. v. United States</u>, 220 F. 3d 169, 176 (3d Cir. 2000). A defendant asserts a facial challenge "by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." <u>D.G. v. Somerset Hills Sch. Dist</u>., 559 F. Supp. 2d 484, 491 (D.N.J. 2008). The Court therefore "must consider the allegations of the complaint as true" in evaluating a facial challenge to subject matter jurisdiction. <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977). In a factual attack under Rule 12(b)(1), however, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." <u>Id</u>, Moreover, in evaluating a factual challenge, a court may consider "evidence outside the pleadings to determine if it has jurisdiction." <u>Gould Elecs. Inc</u>., *supra*. "Rule 12(b)(1) motions may be filed at any time and repeatedly, if the movants assert new arguments warranting [the court's] attention." <u>Fahnestock v. Reeder</u>, 223 F. Supp. 2d 618, 621 (E.D. Pa. 2002). Furthermore, "[w]hen a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and

objections become moot." In re Corestates Trust Fee Litig., 837 F. Supp. 104, 105

(E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994).

> **1.      Motion To Dismiss The Complaint Pursuant To**
> **Rule 12(b)(1) As the Plaintiff Has No Standing**

A Motion to Dismiss pursuant to Fed.R.Civ.P.12(b)(1) challenges the

Court's subject matter jurisdiction and its power to hear the case.  A court may

exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit.

Abraxis Bioscience, Inc. v. Navinta LLC, 625 F.3d 1359 (Fed. Cir. 2010), *quoting*

Keene Corp. v. United States, 508 U.S. 200, 207 (1993).

The Plaintiff  bears the burden of establishing three elements for standing:

> **First,** the plaintiff must have suffered an injury in fact –
> an invasion of a legally protected interest which is (a)
> concrete and particularized and (b) actual or imminent,
> not conjectural or hypothetical. **Second**, there must be a
> causal connection between the injury and the conduct
> complained of – the injury has to be fairly traceable to
> the challenged action of the defendant, and not the result
> of the independent action of some third party not before
> the court. **Third**, it must be likely, as opposed to merely
> speculative, that the injury will be redressed by a
> favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (*citations omitted;*

*internal quotations and alterations omitted*).

The Third Circuit has recognized that of the three required elements of

constitutional standing, "the injury-in-fact element is often determinative."  Toll

Bros., Inc. v. Twp. of  Readington, 555 F.3d 131, 138 (3d Cir. 2009).  To satisfy

5018257

this requirement, the alleged injury must be "particularized," in that it "must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n.1. "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." Id. at 563. The injury must also be "an invasion of a legally protected interest." Id. at 560. A plaintiff who raises multiple causes of action "must demonstrate standing for each claim he seeks to press." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006). "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." Allen v. Wright, 468 U.S.737, 752 (1984). The factual allegations in the Complaint will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406 (3d Cir. 1991).

As a preliminary matter, Burris' correspondence dated June 23, 2015 and July 17, 2015 (which make no reference whatsoever to Main Line but instead address the "merger" of BCC with Atrium and the resulting partnership between those two (2) entities),[30] effectively negates any claims that Plaintiff was "in a partnership with Main Line" or that he has been adversely affected by the alleged

---

[30] As noted previously, Burris specifically stated in the June 23, 2015 letter (attached as Exhibit "N") that BCC merged into Atrium in August 2014. Thus, the BQQ (submitted to St. Charles on October 29, 2014 (see Complaint ¶34) and the Letter of Intent dated December 26, 2014 (Exhibit "M"), both of which were submitted on BCC letterhead were material representations as to Burris' principal.

actions of St. Charles and Main Line.  Moreover, said correspondence from Burris

further demonstrates that he lacks standing to commence the above captioned

litigation in his individual capacity.

The question is whether William Burris, individually, the named plaintiff,

has suffered "an injury in fact- an invasion of a legally protected interest" as a

direct result of the alleged actions of St. Charles complained about in the

Complaint, i.e. engaging in discussions with Main Line regarding the sale of the

Parcel.  The problem is that <u>all</u> of Burris's communications with St. Charles,

including the BQQ, the Letter of Intent and other correspondence relating to the

potential acquisition and development of the Parcel, were submitted on behalf of

Burris Construction Company or Atrium, <u>not</u> Burris individually.  Assuming

*arguendo* that discussions between St. Charles and Main Line led to an agreement

of sale for the Parcel, the "real parties in interest" (*See* F.R.C.P. 17) who would be

impacted would appear to be Burris Construction Company and/or Atrium – not

Burris, individually.  A "favorable decision" regarding the claims asserted in this

litigation could only directly benefit Burris Construction Company and/or Atrium,

not Burris individually.  *See* <u>Lujan</u>, 504 U.S. at 561.  Burris, individually was not a

party to any of the discussions that form the basis of the Complaint presently at

issue.  Because Burris was not a party, he does not have a legally sufficient interest

to qualify as the proper party entitled to obtain judicial resolution of the matter he

20

seeks to challenge.   *See* <u>KBT Corp. v. Ceridian Corp.</u>, 966 F. Supp. 369, 373 (E.D. Pa. 1997) *citing* <u>Chrysler Credit Corp. v. B.J.M. Jr., Inc., et al.</u>, 834 F. Supp. 813 (E.D. Pa. 1993) ("it is axiomatic that a stockholder, director, officer, or employer of a corporation has no individual right of action against third persons for damages that result indirectly to the individual because of an injury to the corporation").

In light of the foregoing, the Court should dismiss this Complaint for lack of subject matter jurisdiction because Burris lacks the requisite standing to assert the claims alleged.

**2.      Motion To Dismiss The Complaint Pursuant To Rule 12(B)(1) Because Of A Parallel Pending State Court Action (Abstention)**

Even if this Court is deemed to have subject matter jurisdiction, it should abstain from exercising it under <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d (1976).  "The <u>Colorado River</u> doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding. <u>Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.</u>, 571 F.3d 299, 307 (3d Cir. 2009).

> The threshold question is whether [the] underlying state court proceeding and the instant proceeding are indeed parallel. Generally, cases are deemed parallel when they "involve the same parties and substantially identical claims, raising nearly identical allegations and issues." <u>Yang v. Tsui</u>, 416 F.3 199,

21

204 n. 5 (3d Cir. 2005) (*citations and internal quotations omitted*).

Erie Operating, LLC v. Foster, No. 14-72, 2015 U.S. Dist. LEXIS 138312 at * 18-19 (W.D. Pa. Aug. 13, 2015).

If the Court finds that the proceedings to be parallel, it must then carefully balance a number of factors to determine if abstention is warranted. *See* Nationwide, 571 F.3d at 308. The Third Circuit has defined six pertinent factors. Id.

The State Court Action in this case and the instant federal proceedings are essentially identical, involving the same parties, substantially identical claims and raising the same allegations and issues relating to the potential sale of the Parcel. As a result, they should be determined to be "parallel". St. Charles' further submits that balancing the pertinent factors in this case weighs heavily in favor of abstention: (1) the state court first assumed jurisdiction over the property; (2) the desirability of avoiding piecemeal litigation dictates allowing the state court action to proceed; (3) the state court not only obtained jurisdiction first but it has also held argument on the injunction motion and by Order of Court dated January 22, 2016 further directed that the matter be scheduled "for one-half day on the equity emergency list"; (4) the substantive law of Pennsylvania controls the Plaintiff's various causes of action; (5) the state court will adequately protect the interests of

the parties; and (6) the inconvenience of the federal forum is not a significant favor here.  *See* Id.

Accordingly, Colorado River abstention is both appropriate and warranted in this case, and calls for the dismissal of Plaintiff's claims.

## B.    LEGAL STANDARD FOR A FED.R.CIV.P. 12(b)(6) MOTION

The purpose of Fed. R.Civ.P. 12(b)(6) is to eliminate baseless claims and to streamline litigation by dispensing with allegations that will result in needless discovery.  *See* Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Plaintiff bears the burden of pleading facts sufficient to defeat all of the "more likely explanations" for a defendant's conduct. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1951, 173 L. Ed. 2d 868 (2009). Accordingly, a claim must be dismissed if a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." Tegg Corp. v. Beckstrom Elec. Co., 2008 U.S. Dist. LEXIS 52184, *12 (W.D.Pa. 2008).

While a court must accept a plaintiff's factual allegations in a complaint as true, a claim requires "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, *supra,* at 555. As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to survive a 12(b)(6) motion to dismiss. Iqbal, *supra,* at 1949; Ayers v. Osram Sylvania, Inc., 2008 U.S. Dist. LEXIS

23

72644, at *6 (M.D.Pa. 2008)(Fed.R.Civ.P. 8(a)(2) requires that factual allegations be sufficient "to raise a right to relief above the speculative level."); <u>Santiago v.Warminster Township</u>, 629 F.3d 121, 130 (3d Cir. 2010)(setting forth a process to determine if a pleading is sufficient under <u>Twombly</u> and <u>Iqbal</u>).

> **1.    Motion to Dismiss Count II of Plaintiff's Complaint Pursuant to Rule 12(b)(6) For Failure to State a Claim for "Aiding and Abetting Breach of Fiduciary Duty"**

Count II of the Complaint purports to set forth a cause of action against St. Charles for "aiding and abetting Main Line's breach of its fiduciary relationship" with Burris[31]. Throughout the Complaint, Burris cavalierly refers to a "confidential" and/or "fiduciary" relationship existing between Burris and/or BCC and Main Line despite the overwhelming documentation to the contrary. Before analyzing Burris' claim further, it is appropriate to consider the definition of a fiduciary relationship. To state the obvious, there can be no breach of fiduciary duty –nor a claim for aiding and abetting such a breach—in the absence of a fiduciary relationship.

A fiduciary relationship is "characterized by 'overmastering influence' on one side or 'weakness, dependence, or trust, justifiably reposed' on the other side." <u>eToll, Inc. v. Elias/Savion Advertising, Inc.</u>, 811 A.2d 10, 23 (Pa. Super. 2002) (*citing* <u>Basile v. H&R Block, Inc.</u>, 777 A.2d 95, 101 (Pa. Super. Ct. 2001)). One

---

[31] *See* Complaint ¶88.

key fact necessary to establish a fiduciary relationship is that the "the agent has authority to alter the principal's relationships with third parties, such as binding the principal to a contract." Id. Specifically, entering into an arms-length commercial agreement does not create a fiduciary relationship in Pennsylvania, "however important its performance may be to the success of one's business." Id.; Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc., 28 F. Supp. 2d 947, 953 (E.D. Pa. 1998). Thus, "[i]n the business context, a confidential relationship is formed only if one party surrenders substantial control over some portion of his affairs to the other." Devon IT, Inc. v. IBM Corp., 805 F. Supp. 2d 110, 129-30 (E.D. Pa. 2011) (*citations omitted*).

   Even assuming all the factual allegations in the Complaint are true, as tempered by the actual documents relied upon, Burris has failed to demonstrate he had a fiduciary relationship with Main Line as a matter of law. The Complaint contains no allegations of a truly unique relationship between Plaintiff and Main Line to distinguish it from other commercial projects. There is no allegation that Burris surrendered "substantial control" to Main Line. As a matter of public record, the BQQ attached to Burris' Complaint as Exhibit 1 states that Burris Construction Company (and its related entity, to wit: Atrium  Health) is a sophisticated business entity, each with substantial portfolio of commercial properties and operations with significant experience in large scale multimillion

25

dollar projects. Burris, as an officer of Burris Construction Company and/or Atrium had essentially equal if not superior bargaining power.  Rather than surrendering control, in fact, it is clear from the allegations of the Complaint that Burris maintained his own agenda and directed the process involved in making an offer on the Parcel on behalf of BCC and/or Atrium. Thus, as an initial matter, there was no fiduciary relationship between Burris and Main Line.

The documents and emails exchanged between Burris and Main Line that are attached to Burris' Affidavit filed in the Montgomery County Court of Common Pleas clearly belie Plaintiff's claim that any "partnership had been formed with Main Line," (let alone a partnership identified in ¶26 of the Complaint as the "Burris-Main Line Fiduciary Venture"). They further belie any contention that St. Charles was aware of this phantom partnership.  *See* e.g., BA 016 (refers to "potential partnership"); BA 023-024 (reference to "possible joint venture"); and BA 040 (wherein Burris specifically acknowledges in writing (on "BCC letterhead") that no partnership with Main Line existed at the time of the submission of the Buyer Qualification Questionnaire to St. Charles) (at ¶15 "We are negotiating the finer points of a partnership…")[32]

---

[32] Burris' Affidavit, together with its attachments is a matter of public record.  BCC attached this document as Exhibit "A" to its Reply in Opposition to St. Charles' Motion for Injunction on January 14, 2016 and is located at docket entry 15.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

Likewise, the documents prepared by Burris, (coupled with the emails exchanged between Plaintiff and Main Line) clearly refute the contention that there was some kind of "partnership" between Burris and Main Line.  Indeed, even the BQQ attached to the Complaint as Exhibit 1 reveals that (a) it was submitted by Burris Construction Company - not William Burris, the named plaintiff; (b) it identifies the "decision makers" in charge of submitting the BQQ as "William G. Burris, Jr. and William G. Burris, III and Kevin Breslin" (the Managing Member of Atrium)- no one from Main Line is identified; and (c) it includes an affirmative statement that a partnership with Main Line did not in fact exist at the time the BQQ was submitted to St. Charles.  In light of the same, Counts II, VIII, IX, and improperly numbered Second Count IX of the Complaint cannot be sustained.

Finally, the inclusion of the judicial admission in ¶70 of the Complaint clearly evidences the fact that there was no "partnership" with Main Line as Plaintiff specifically alleges that he decided to withdraw the same action originally filed in State Court because "the parties were unable to create any potential relationship to proceed in the development envisioned by the parties in the [alleged] Burris-Main Line Fiduciary Venture . . ." (emphasis added).

Even assuming that a fiduciary relationship existed (which St. Charles does not concede) a cause of action for aiding and abetting the breach of a fiduciary duty is the subject of some debate.  The Supreme Court of Pennsylvania has not

formally recognized a cause of action for aiding and abetting a breach of fiduciary duty. Official Committee of Unsecured Creditors of Allegheny Health Education and Research Foundation v. PriceWaterhouseCoopers, LLP, 605 Pa. 269, 989 A.2d 313, 327 n.14 (Pa. 2010). However, the Commonwealth Court of Pennsylvania has held that a cause of action exists "for aiding and abetting a breach of fiduciary duty pursuant to Section 876[b] of the Restatement (Second) of Torts." Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Cmwlth. 2003). Based on the decision in Koken, some federal district judges have predicted that the Pennsylvania Supreme Court would recognize this cause of action. *See e.g.*, Reis v. Barley, Snyder, Senft & Cohen, LLC, 484 F.Supp.2d 337, 350-352 (E.D.Pa. 2007) (Gardner, J.). Other judges have disagreed. *See e.g.* Daniel Boone Area School District v. Lehman Bros., Inc., 187 F.Supp. 2d 400 (W.D. Pa. 2002) (D. Brooks Smith, Chief Judge).

Assuming *arguendo* that the cause of action for "aiding and abetting breach of fiduciary" exists, its elements are:

> (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach.

Koken, 825 A.2d at 732; Reis, 484 F.Supp.2d at 350-351;

The second element requires actual knowledge of the breach. *See*, Miles Farm Supply, LLC v. Helena Chemical Company, 595 F.3d 663, 666 (6th Cir. 2010); Invest Almaz v. Temple-Inland Forest Products Corporation, 243 F.3d 57,

82-83 (1st Cir. 2001); <u>Kolbeck v. LIT America, Inc.</u>, 939 F.Supp. 240, 247

(S.D.N.Y. 1996) *aff'd*, 152 F.3d 918 (2d Cir. 1998).

     With regard to the knowledge element, Burris pleads only that St. Charles

"had knowledge of the fiduciary duties"[33] but fails to allege that St. Charles knew

of the <u>breaches</u> of fiduciary duty.  Such "threadbare recitals of the elements" do not

set forth "sufficient factual matter" to survive a motion to dismiss. <u>Fowler v.

UMPC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009)(*quoting* <u>Iqbal</u>, 556 U.S. at

678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).  While Burris has nominally repeated

the elements of the cause of action (*see* ¶¶ 85-87 of Complaint), he fails to

demonstrate how St. Charles would ever have "knowledge of the fiduciary duties

owed by Main Line" or even what the exact nature of the relationship was between

Burris and Main Line.  Thus, Burris is unable to plead the "how, when, and where"

St. Charles would have gained knowledge of the breach and thus Burris cannot

satisfy the second element of the cause of action. *See* <u>Kolbeck</u>, 939 F. Supp. at

246.

     The analysis of a 12(b)(6) Motion requires the Court "to draw on its judicial

experience and common sense" to determine if sufficient facts have been pled to

nudge Plaintiff's claims over the line "from conceivable to plausible," <u>Iqbal</u>, 556

U.S. at 680-681. In this case, Burris is not even able to reach the realm of

---

[33] *See* Complaint ¶85.

"conceivable".  At most, Burris has pled that St. Charles was aware of some discussion between Burris and Main Line.  But that is a far cry from adequately alleging that St. Charles had actual knowledge of a fiduciary relationship or the manner in which the two parties were working together such that St. Charles would know what obligation, if any, were owed by Main Line to Burris and what conduct would constitute a breach thereof.  Burris never identified himself and/or BCC as a partner with Main Line in any communication with St. Charles or HFF (broker), nor did he ever provide a partnership agreement.  *See* Declaration of Stephen P. Dolan, Jr., ¶15.

As St. Charles indicated in its Statement of Facts, Burris was less than candid in his dealings with the Seminary, misrepresenting whether he was acting on behalf of Burris Construction Company or Atrium when communicating with St. Charles.  In addition, he was at best inconsistent when referring to Main Line variously as "co-promoter", "joint venture" –just as the Complaint makes reference to "a joint venture/partnership/confidential relationship", then finally fabricating the name "Burris-Main Line Fiduciary Venture," (*see* Complaint at ¶ 26).  As that title suggests, it has little connection to reality.

As for the third element of the claim, Burris is required to plead the time, place, and manner of the alleged "substantial assistance" provided by St. Charles in aiding the breach of fiduciary duty in the particularity required by F.R.C.P 9(b).

Varnberg v. Minnick, 760 F. Supp. 315 (S.D.N.Y. 1991). This he also has failed to do.  Pleading substantial assistance specifically requires Plaintiff to show that the actions of the aider and abettor proximately caused the harm upon which the primary liability is predicated.  *See* Kolbeck, 939 F.Supp. at 247.  Because St. Charles was not a fiduciary to Burris, nor did it have any contractual obligation to Burris or Main Line, any alleged failure to disclose discussions between St. Charles and Main Line "cannot give rise to aiding and abetting liability." Kolbeck, 939 F. Supp. at 247.

Accordingly, for all of the reasons stated above, Count II of Burris' Complaint fails to state a claim upon which relief can be granted.

**2.      Motion to Dismiss Count VIII of Plaintiff's Complaint Pursuant to Rule 12(b)(6) For Failing To State a Claim for Civil Conspiracy**

Under Pennsylvania law, to recover for civil conspiracy, at a minimum, the following elements must be alleged: (1) a combination of two or more persons acting in concert; (2) with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose (i.e. an intent to injure); (3) an overt act done in pursuance of the common purpose; and (4) plaintiff has incurred actual legal damage.  *See* e.g. Corneal v. Jackson Twp., 313 F. Supp. 2d 457 (M.D. Pa. 2003) , *aff'd*, 94 Fed. Appx. 76, 2004 U.S. App. LEXIS 7198 (3d

Cir. Pa. Apr. 13, 2004); Weaver v. Franklin County, 918 A.2d 194 (Pa. Cmwlth. Ct. 2007).

An "'actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor.'" Levin v. Upper Makefield Twp., 90 F. App'x 653, 667 (3d Cir. 2004). Ultimately, "only a finding that the underlying tort has occurred will support a claim for civil conspiracy." Alpart v. Gen. Land Partners, Inc., 574 F. Supp. 2d 491, 506 (E.D. Pa. 2008) (*quotation omitted*); *see also* Duffy v. Lawyers Title Ins. Co., 972 F. Supp. 2d 683, 698 (E.D. Pa. 2013) ("Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."). To allege a plausible claim of civil conspiracy, a plaintiff must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997) (*citation and internal quotation marks omitted*). It is not enough that the "end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." Id.

Finally, "[p]roof of malice, i.e., an intent to injure  is essential in proof of a conspiracy."  Commerce Bank/Pennsylvania v. First Union Nat. Bank, 911 A.2d 133, 143 (*quoting* Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472) (Pa.

32

1979). "Malice requires …that the *sole* purpose of the conspiracy was to injure the plaintiff," and that this intent was without justification. Doltz v. Harris & Assoc., 280 F.Supp. 2d 377, 389 (E.D. Pa. 2003) *(Emphasis added)*. Because malice can only be found when the *sole* purpose of the conspiracy is to injure the plaintiff, a showing that a person acted for professional reasons, and not solely to injure the plaintiff, negates a finding of malice. *See* Bro-Tech Corp. v. Thermax, Inc., 651 F. Supp. 2d 378, 419 (E.D. Pa. 2009); Thompson Coal Co., 412 A.2d at 472 (noting that the intent to injure must be absent justification).

Courts in Pennsylvania require that plaintiffs who allege civil conspiracy must plead some fact, "such as meetings, conferences, telephone calls or joint signatures" on relevant forms, or "allege facts inferring conspiratorial conduct." Petula v. Mellody, 588 A.2d 103, 107 (Pa. Cmwlth. 1991). In Petula, the court held that the plaintiff had failed to state a civil conspiracy claim where, although he alleged parallel conduct between defendants, he did not allege any facts from which one could infer conspiratorial conduct. Id. *See also*, Landau v. Western Pennsylvania Nat. Bank, 282 A.2d 335, 339 (Pa. 1971).

Burris' claim against St. Charles for civil conspiracy in Count VIII must be dismissed because he has not fulfilled pleading the legal elements necessary to state this cause of action.

33

First, Burris fails to plead <u>any</u> underlying tortious conduct on the part of St. Charles  to support a conspiracy claim.  There is no independent wrong or tort that would serve as a valid cause of action.  The only possible civil cause of action against St. Charles that might support a conspiracy claim is tortious interference with contractual relations.  However, Burris has completely failed to allege or describe the elements of that tort as it might be applied to St. Charles in this case.

Second, there is no allegation in Count VIII of a combination acting in concert for the <u>sole</u> purpose to cause harm to Burris.  *See* <u>Doltz</u>, *supra*. Unsupported an unrefined allegations of engaging in "secret negotiations" and/or "secret discussions" do nothing to advance a claim against St. Charles.  They fail to describe tortious conduct.  St. Charles is/was free to conduct any negotiations or discussions concerning the sale of the Parcel that it chose to entertain.  St Charles only acted as it stated and set out to do from the very beginning of the process: receive and/or vet any offer to purchase the parcel as it saw fit and determined in its complete discretion.  *See* <u>Thompson Coal Co.</u>, *supra*.

Third, (and even more problematic), the Complaint has no factual allegations whatsoever to describe the overt act(s) done in pursuance of the common purpose (*See* Complaint ¶ 125). *See* <u>Petula</u>, <u>supra</u>.  Without factual allegations with regard to meetings, conferences, joint signatures or telephone calls to advance a conspiracy, the claim is properly dismissed.  <u>Id</u>.  Similarly, in <u>Grose</u>

5018257

v. Procter Gamble Paper Products, 866 A.2d 437 (Pa. Super. 2005)(the count of civil conspiracy was dismissed for failure to state a cause of action because the complaint was "totally devoid of any averments specifying either an unlawful act or a lawful act carried out by unlawful means." Grose, 866 A.2d at 441. The complaint was dismissed because no overt act was identified or referenced in the complaint.

The fourth element of a civil conspiracy is that the individual conspired against must have suffered actual damages.  "It is the damage, and not the agreement itself, that is the gravamen of a civil conspiracy suit, and permits a recovery." Cohen v. Pelagatti, 528 A.2d 657, 658 (Pa. Super. Ct. 1987). Therefore, the existence of identifiable damages, even if nominal, must be established by the facts alleged in support of the cause of action. Id. Where the harm alleged is either speculative (as in the case of Burris), or involves a threat of future harm only, a cause of action for civil conspiracy cannot be maintained. Id.

Accordingly, Count VIII must be dismissed.


**3.    Motion to Dismiss the Count for "Constructive Trust and Permanent Injunctive Relief" Pursuant to Rule 12(b)(6) As Being Contrary to Law and Fails to State a Claim**

Count IX continues Burris' fantasy of a partnership with Main Line to an extreme and seeks to impose a constructive trust that would require (1) Main Line

to acquire the Parcel and to hold it in trust for Burris and for the phantom Burris-Main Line Joint Venture, and (2) Main Line to convey the Parcel to Burris and the Joint Venture "to avoid unjust enrichment." (*See* Complaint ¶¶130-131). The first problem, of course, is that St. Charles is under no obligation whatsoever to sell the property to Main Line. There is presently no agreement of sale between St. Charles and Main Line. Secondly, St. Charles is the record owner of the land and has been since 1911. St. Charles owes no fiduciary obligation to Burris and cannot be involuntarily required to transfer the Parcel to Burris or compromise its title by being ordered to hold the Parcel in trust just because Burris believes he has been duped by Main Line.

A constructive trust is "one created by equity to prevent unjust enrichment or to redress a wrong." Huber v. Wagner, 284 Pa. Super. 133, 425 A.2d 456, 458 (Pa. Super. Ct. 1981). "It exists whenever one holding title to property is subject to an equitable duty to convey it to another on the ground that he [or she] would be unjustly enriched if he [or she] were permitted to retain it." Id. The constructive trust arises more frequently in situations of "fraud, accident, mistake, duress or undue influence." **It is a remedy, not a separate cause of action**. Lerario v. Provident Life and Accident Ins. Co., No. CIV A. 96-2100, 1996 U.S. Dist. LEXIS 13671, 1996 WL 532491, at *4 (E.D. Pa. Sept. 20, 1996). (Emphasis added).

36

Under Pennsylvania law, a court may grant the equitable remedy of the imposition of a constructive trust if property is wrongfully held due to the breach of a confidential relationship.  Yohe v. Yohe, 353 A.2d 417 (Pa. 1976).  In this case, however as already established, St. Charles has held title to the Parcel for more than 100 years and still holds the title.   There is no basis to impose a constructive trust on the Parcel – Burris' speculation and conjecture that St. Charles and Main Line have reached a written agreement for the sale of the property, which St. Charles denies and that such an agreement would violate some fiduciary duty owed to Burris, is certainly not sufficient.  Moreover, Burris has admitted the lack of relationship between it and Main Line for purposes of developing the Parcel to wit: "the parties were unable to create any potential relationship to proceed in the development envisioned by the parties in the Burris-Main Line Fiduciary Venture."  (See Complaint ¶70).

There is quite emphatically no basis upon which to impose a constructive trust on the Parcel.  Furthermore, Burris has made no pleading nor a showing whatsoever to warrant any consideration for "permanent injunctive relief." Accordingly, Count IX should be dismissed as a matter of law and equity.

37

**4.      Motion to Dismiss Count X (Permanent Injunction) Pursuant to Rule 12(b)(6) For Failing to Plead an Entitlement To Any Injunction**

Plaintiff's second Count IX [sic] (which will be referred to herein as Count "X") is labelled "Permanent Injunction."   Nevertheless, in ¶¶ 136 and 137, Plaintiff is requesting the court to enter a "preliminary injunction."  Since there are significantly different standards that apply to a plea for a permanent injunction versus a preliminary injunction under Pennsylvania law.  *See e.g.,* Chester v. Chester Redevelopment Authority, 686 A.2d 30, 35 (Pa. Cmwlth. 1996), this constitutes a material pleading error which, in and of itself, provides a basis for the court to dismiss this Count.

There are further problems.  Count "X" fails to set forth any factual allegation to support Plaintiff's otherwise bald accusation of a "conspiracy" between Main Line and St. Charles.  *See* Complaint ¶135.  Paragraph 135 is virtually incomprehensible insofar as St. Charles is concerned.  It fails to place St. Charles on notice of what wrongdoing is being asserted against it.  Rather, it uses the catch-all phrase: "all with the aid of and in conspiracy with Seminary."  The question is "all" what?  For the reasons alone, Count "X" should be dismissed for failing to state a claim upon which relief can be granted.

In addition, this Count again relies upon the premise that a fiduciary relationship existed between Plaintiff and Main Line and that Main Line breached

fiduciary duties—neither of which has the slightest credibility and neither of which can be properly alleged as demonstrated throughout this Memorandum.

In Brayman Construction Corporation v. Pennsylvania Department of Transportation, the Supreme Court of Pennsylvania held that a preliminary injunction is appropriately granted where: (1) the movant possesses a clear right to the injunctive relief; (2) the injunctive relief prevents immediate and irreparable harm to the movant; (3) refusing the injunctive relief will result in greater harm than granting it; (4) the injunctive relief will not adversely affect the public interest; and (5) the injunctive relief is narrowly tailored and will restore the status quo as it existed before the defendant's alleged wrongful conduct.  Brayman Const. Corp. v. Penn Dep't of Transp., 13 A.3d 925, 935 (Pa. 2011).

Evaluating each of these prerequisite for injunctive relief, Plaintiff fails miserably to meet its burden and is not entitled to any injunction.

For many of the same reasons discussed above as to why Plaintiff's Complaint should be dismissed, Burris has no clear right to relief and cannot satisfy the requirements for injunctive relief.

The standard for the grant of a preliminary injunction is and always has been that the movant must demonstrate that the right to relief is clear.  Furthermore, "[a] preliminary injunction is an extraordinary remedy which is to be granted only

when each of these factors has been clearly established." <u>Golden Triangle News, Inc., v Corbett</u>, 689 A.2d 974, 978 (Pa Cmwlth. 1997).  Burris cannot do so.

To the contrary, as the court explained in <u>Chester</u>:

> it is well established that separate and distinct standards govern a request for preliminary injunction and a request for permanent injunction: a preliminary injunction turns on the presence of imminent, irreparable harm, while a permanent injunction is warranted if no adequate remedy at law exists for a legal wrong. <u>LARA, Inc. v. Dorney Park Coaster Co</u>., 116 Pa. Cmwlth. 548, 542 A.2d 220 (Pa. Cmwlth. 1988), *appeal denied*, 522 Pa. 580, 559 A.2d 40 (1989).

<u>Chester v. Chester Redevelopment Authority</u>, 686 A.2d 30, 35 (Pa. Cmwlth. 1996), *app. denied*, 548 Pa. 650, 695 A.2d 787 (Pa. 1997).

Plaintiff's "right to relief" in this case, far from being "clear", is extremely doubtful as illustrated throughout. Rather, it is St. Charles who has the more compelling case. Similarly, Burris' "need" for relief is no more "immediate", and in fact, substantially less than St. Charles'. Finally, there is no irreparable harm: any of Plaintiff's claims are found to have any merit, they can be adequately compensated by an award of money damages. Plaintiff has not and cannot satisfy any of the requirements in order to get injunctive relief and this Count must be dismissed, nor can Plaintiff make out a case for permanent injunction.

40

**5.      Motion to Dismiss Plaintiff's Claim for Punitive Damages
            Pursuant to Rule 12(b)(6)**

Pennsylvania law provides that a defendant must have engaged in

"outrageous" or "intentional, reckless or malicious" conduct to sustain a claim for

punitive damages.  Feld v. Merriam, 485 A.2d 742, 747-48 (Pa. 1984); *see* Boring

v. Google, Inc., 362 F. App'x 273 (3d Cir. 2010) *cert. denied* 2010 WL 2242740

(U.S. Oct. 4, 2010).  In order to establish the claim, it is essential that the

Complaint identify the material facts supporting allegations of malicious, wanton,

willful, or oppressive conduct.  Id.  Burris' Complaint here, however, fails to allege

any conduct on the part of St. Charles that is even improper, let alone behavior that

rises to the "outrageous" level.

Rather, St. Charles was simply engaging in business as usual in receiving

proposals relating to the purchase of the Parcel, requesting additional information

as appropriate, discussing and vetting proposals – all of which it had every right to

do and all of which was perfectly proper.  Moreover, Burris has essentially

admitted that it has no claim against St. Charles in the Amended *lis pendens*.

Burris has in no way set forth a basis for a claim of punitive damages.

Burris never advised St. Charles that he had an exclusive arrangement with

Main Line for purposes of submitting a proposal, nor did Burris provide St.

Charles with any documentation to indicate the nature of their affiliation despite

requests to do so.  St. Charles had no reason whatsoever to believe that it could not

41

entertain individual communications about the Parcel with any of the potential buyers.  Burris' Complaint makes no factual allegation to the contrary.  Just as St. Charles had individual discussions and exchanged information with Burris, as the Complaint and documents make clear, so too it had every right to discuss the project with Main Line.

There are no allegations in the Complaint to support any inference that St. Charles' conduct *vis-à-vis* Burris was improper, let alone "outrageous" or "malicious."  There is simply no foundation in the Complaint for a punitive damages claim against St. Charles and it should be dismissed.

5018257

## V.   CONCLUSION

For all of the foregoing reasons, Defendant Saint Charles Borromeo Roman Catholic Seminary respectfully requests that this Honorable Court dismiss Plaintiff's Complaint, with prejudice.

Respectfully submitted,

Obermayer Rebmann Maxwell & Hippel LLP

/s/ Paige Macdonald-Matthes
Thomas A. Leonard, Esquire
Attorney ID No. 14781
Paige Macdonald-Matthes, Esquire
Attorney ID No. 66266
200 Locust Street, Suite 400
Harrisburg, PA  17101
(717) 221-1609 Telephone
(717) 234-9734 Facsimile
*Attorneys for Defendant, Saint Charles Borromeo Roman Catholic Seminary*

Dated: March 15, 2016

43

## <u>CERTIFICATE OF SERVICE</u>

I, Paige Macdonald-Matthes, Esquire hereby certify that on the 15th day of March, 2016, a true and correct copy of the foregoing Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint was served via electronic filing, upon the following:

Paul R. Rosen, Esquire
Andrew J. DeFalco, Esquire
(sent via CM/ECF)
Counsel for Plaintiffs

David Smith, Esquire
David Dzengowski, Esquire
(sent via CM/ECF)
Counsel for Main Line Health System

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

/s/ Paige Macdonald-Matthes
Paige Macdonald-Matthes, Esquire
(Pa. Attorney I.D. No. 66266)
200 Locust Street, Suite 400
Harrisburg, PA 17101
(717) 234-9730 Telephone
(717) 234-9734 Facsimile
pmm@obermayer.com
*Attorneys for Defendant Saint Charles Roman Catholic Seminary*

44