## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM BURRIS, | : | |
| | : | CASE NO.:  2:16-cv-00543 |
| PLAINTIFF, | : | |
| | : | THE HONORABLE GENE E.K. PRATTER |
| V. | : | |
| | : | ELECTRONICALLY FILED |
| SAINT CHARLES BORROMEO | : | |
| ROMAN CATHOLIC | : | |
| SEMINARY AND MAIN LINE | : | |
| HEALTH SYSTEM, | : | |
| | : | |
| DEFENDANTS. | : | |

---

## MEMORANDUM OF LAW IN SUPPORT OF SAINT CHARLES BORROMEO ROMAN CATHOLIC SEMINARY'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

---

Submitted By:
**OBERMAYER REBMANN MAXWELL & HIPPEL, LLP**

By:   /s/ Paige Macdonald-Matthes, Esquire
Thomas A. Leonard, Esquire
Attorney ID No. 14781
Paige Macdonald-Matthes, Esquire
Attorney ID No. 66266
200 Locust Street, Suite 400
Harrisburg, PA  17101
(717) 221-1609 Telephone
(717) 234-9734 Facsimile
*Attorneys for Defendant, Saint Charles Borromeo Roman Catholic Seminary*

# <u>TABLE OF CONTENTS</u>

Table of Authorities ...................................................................................ii

I.      PRELIMINARY STATEMENT ..................................................2

II.     STATEMENT OF PROCEDURAL HISTORY AND FACTS ...................4

        A. Procedural History .........................................................4

        B. Factual Allegations ........................................................9

III.    ISSUES PRESENTED .................................................16

IV.     LEGAL ARGUMENT ...................................................17

        A. LEGAL STANDARD FOR FED. R.CIV. P. 56 MOTION ....................17

        B. THE SUMMARY JUDGMENT STANDARD AS
           APPLIED TO THIS CASE ......................................19

              1.  Count II of Plaintiff's Complaint Fails to State a
                  Claim for "Aiding and Abetting Breach of Fiduciary
                  Duty" ...........................................................24

              2.  Count VIII of Plaintiff's Complaint Fails to State a
                  Claim For Civil Conspiracy ...........................................34

              3.  The Count for "Constructive Trust and Permanent
                  Injunctive Relief" Is Contrary to Law and Fails to
                  State a Claim ...................................................40

              4.  Count X (Permanent Injunction) Fails to Plead an
                  Entitlement To Any Injunction Relief ...........................42

              5.  Plaintiff's Claim for Punitive Damage Cannot Be
                  Sustained ...................................................46

V. CONCLUSION……………………………………………………49

## TABLE OF AUTHORITIES

Accurso v. Infra-Red Services, 119 F. Supp. 3d 316,
    327 (E.D. Pa. 2015) ...................................................................................35

Alpart v. Gen. Land Partners, Inc., 574 F. Supp. 2d
    491, 506 (E.D. Pa. 2008) .........................................................................35

Ammond v. McGahn, 532 F.2d 325, 329 (3d. Cir.
    1976) ........................................................................................................45

Anderson v. City of Phila. 65 F. App'x 800 (3d. Cir.
    2003) ........................................................................................................49

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249
    (1986)................................................................................................17, 18

AVS Foundation v. Eugene Berry Enterprise, LLC,
    2011 U.S. Dist. LEXIS 139827 (W.D. Pa. Dec.
    6, 2011) ....................................................................................................22

Basile v. H&R Block, Inc., 777 A.2d 95, 101 (Pa.
    Super. Ct. 2001)......................................................................................25

Bd. of Trs. of Teamsters Local 863 Pension Fund v.
    Foodtown, Inc., 296 F.3d 164, 174 (3d Cir.
    2002) ........................................................................................................29

Ben-Kotel v. Howard Univ. 319 F.3d. 532, 536 (D.C.
    Cir. 2003) .................................................................................................21

Boring v. Google, Inc., 362 F. App'x 273 (3d Cir.
    2010) ........................................................................................................47

Brayman Const. Corp. v. Penn Dep't of Transp., 13
    A.3d 925, 935 (Pa. 2011).........................................................................44

Bro-Tech Corp. v. Thermax, Inc., 651 F. Supp. 2d
    378, 419 (E.D. Pa. 2009) ...................................................................36, 38

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ................................................17, 18, 19

Chester v. Chester Redevelopment Authority, 686 A.2d 30, 35 (Pa. Cmwlth. 1996)....................................................46

Chrysler Credit Corp. v. B.J.M. Jr., Inc., et al., 834 F. Supp. 813 (E.D. Pa. 1993) ........................................30

Cohen v. Pelagatti, 528 A.2d 657, 658 (Pa. Super. Ct. 1987) ........................................................40

Commerce Bank/Pennsylvania v. First Union Nat. Bank, 911 A.2d 133, 143 ........................................36

Corneal v. Jackson Twp., 313 F. Supp. 2d 457 (M.D. Pa. 2003) ..........................................................35

Daniel Boone Area School District v. Lehman Bros., Inc., 187 F.Supp. 2d 400 (W.D. Pa. 2002) ....................................28

Dantzler v. Beard, 2007 U.S. Dist. LEXIS 96919 (W.D. Pa. Dec. 6, 2007) ........................................20, 21

Devon IT, Inc. v. IBM Corp., 805 F. Supp. 2d 110, 129-30 (E.D. Pa. 2011) ..........................................25

Doltz v. Harris & Assoc., 280 F.Supp. 2d 377, 389 (E.D. Pa. 2003) ..............................................36, 38

Dowling v. Philadelphia, 855 F.2d 136 (3d Cir. 1988) ...........................................22, 23

Duffy v. Lawyers Title Ins. Co., 972 F. Supp. 2d 683, 698 (E.D. Pa. 2013) ........................................35

eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 23 (Pa. Super. 2002) ....................................25

Federal Ins. Co. v. Sandusky, 2013 U.S. Dist. LEXIS 29740 (M.D. Pa. Mar. 1, 2013) ....................................23

iii

Fedor v. Van Note-Harvey Assocs. 2011 U.S. Dist.
LEXIS 29446 ............................................................................47

Feld v. Merriam, 485 A.2d 742, 747-48 (Pa. 1984) ..............................47

Fowler v. UMPC Shadyside, 578 F.3d 203, 210 (3d
Cir. 2009) ............................................................................31

Frederick v. Southeastern Penna. Transp. Auth., 892
F. Supp. 122 (E.D. Pa. 1995) ......................................................4

Golden Triangle News, Inc., v Corbett, 689 A.2d
974, 978 (Pa. Cmwlth. 1997) ......................................................45

Great W. Life Assurance, Co., v Levithan, 834 F.
Supp. 858, 864 (E.D. Pa. 1993) ...................................................47

Grose v. Procter  Gamble Paper Products, 866 A.2d
437 (Pa. Super. 2005) ...............................................................39

Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir.
1992) ...................................................................................18

Holiday Inns of America, Inc., v. B&B Corporation,
409 F. 2d 614, 618 (3d Cir. 1969) ...............................................45

Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155,
1158 (3d Cir. 1990)...................................................................17

Huber v. Wagner, 284 Pa. Super. 133, 425 A.2d 456,
458 (Pa. Super. Ct. 1981) ..........................................................41

In re Burlington Coat Factory Sec. Litig., 114 F.3d
1480 (3d Cir. 1997)...................................................................50

In Re Scott's Estate, 316 A.2d 883 (Pa. 1974) ....................................24

Instant Air Freight Co., v. C.F. Air Freight, Inc., 882
F. 2d 797, 799 (3d Cir. 1989) .....................................................43

iv

Invest Almaz v. Temple-Inland Forest Products
        Corporation, 243 F.3d 57, 82-83 (1st Cir.
        2001) ................................................................................31

Iseley v. Beard, 2009 U.S. Dist. LEXIS 52014 (M.D.
        Pa. June 15, 2009)........................................................20

Jean Alexander Cosmetics, Inc. v. L'Oreal USA,
        Inc., 458 F.3d 244, 256 n.5 (3d Cir. 2006) ....................4

Jet 1 Ctr., Inc. v. City of Naples Airport Auth., 319
        B.R. 11 (Bankr. M.D. Fla. 2004) ..................................4

KBT Corp. v. Ceridian Corp., 966 F. Supp. 369, 373
        (E.D. Pa. 1997) .............................................................30

Kolbeck v. LIT America, Inc., 939 F.Supp. 240, 247
        (S.D.N.Y. 1996)......................................................31, 32,
                                                                                        33

Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Cmwlth.
        2003) ........................................................................28, 29

Landau v. Western Pennsylvania Nat. Bank, 282
        A.2d 335, 339 (Pa. 1971)..............................................37

LARA, Inc. v. Dorney Park Coaster Co., 116 Pa.
        Cmwlth. 548, 542 A.2d 220 (Pa. Cmwlth.
        1988) ..............................................................................46

Lerario v. Provident Life and Accident Ins. Co., No.
        CIV A. 96-2100, 1996 U.S. Dist. LEXIS
        13671, (E.D. Pa. Sept. 20, 1996) ..................................41

Levin v. Upper Makefield Twp., 90 F. App'x 653,
        667 (3d Cir. 2004)..........................................................35

Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888
        (1990)..............................................................................20

Macauley v. Estate of Nicholas, 7 F. Supp. 3d 468,
        478 n.7 (E.D. Pa. 2014) ............................................................4

Matter of Bevil, Bresler & Schulman, Inc., 94 B.R.
        817, 822 n.4 (D.N.J. 1989) .......................................................21

Matsushita Electric Indus. Co., Ltd. V. Zenith Radio
        Corp., 475 U.S. 574 (1986) .......................................................20

McKenna v. Healthease, Inc., 573 Fed. Appx. 190
        (3d Cir. 2014)...........................................................................22

Miles Farm Supply, LLC v. Helena Chemical
        Company, 595 F.3d 663, 666 (6th Cir. 2010) ..............................31

Novartis Con. Health, Inc. v. J&J, 290 F.3d 578, 586
        (3d. Cir. 2002) .........................................................................45

Oburn v. Shapp, 521 F. 2d 142, 147 (3d. Cir. 1975) ..............................44

O'Boyle v. Braverman, No. 08-3865, 337 Fed. App'x
        162, 165 (3d Cir. July 15, 2009)..................................................4

Official Committee of Unsecured Creditors of
        Allegheny Health Education and Research
        Foundation v. PriceWaterhouseCoopers, LLP,
        605 Pa. 269, 989 A.2d 313, 327 n.14 (Pa.
        2010) .....................................................................................28

Petula v. Mellody, 588 A.2d 103, 107 (Pa. Cmwlth.
        1991) .................................................................................37, 39

Reis v. Barley, Snyder, Senft & Cohen, LLC, 484
        F.Supp.2d 337, 350-352 (E.D.Pa. 2007) .....................................28

Reis v. Barley, Snyder, Senft & Cohen, LLC, 667
        F.Supp.2d 471, 492 (E.D.Pa. 2009)............................................29

Scott v. Harris, 550 U.S. 372, 380 (2007) ...............................19, 21,

Seddon v. Maytag Corp., 2005 U.S. Dist. LEXIS
          49111 ...................................................................................20

Serafini v. Mariani, No. CV-08-0469, 2010 U.S. Dist.
          LEXIS 31819 *10-11 (E.D. Pa. Mar. 31, 2010)............................41

Smith v. National Collegiate Ath. Ass'n., 139 F. 3d
          180 (3d. Cir. 1998).........................................................49

Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D.
          Pa. 1997) .................................................................36

Synthes, Inc. v. Emerge Med., Inc., 25 F. Supp. 3d
          617 (E.D. Pa. 2014) ..................................................29, 30

System Operations v. Scientific Games Development
          Corp., 555 F.2d 1131, 1141 (3d Cir. 1977) ....................................43

The Continental Group, Inc. v. Amoco Chemicals
          Corp., 614 F.2d 351, 357 (3d. Cir. 1980) .......................................44

Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466,
          472) (Pa. 1979) ..................................................36, 38

Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361
          (3d Cir. 1987)....................................................................2

Townsend v. Hall, 2015 U.S. Dist. LEXIS 131280
          (M.D. Pa. Aug. 12, 2015) ..............................................22

Transamerica Occidental Life Ins. Co., v. Total Sys.,
          513 Fed. Appx. 246 (3d Cir. 2013) .............................................20, 21

U.S. Claims, Inc. v. Flomenhaft, 519 F. Supp. 2d
          532, 541 (E.D. Pa. 2007) ...............................................43

Valley Forge Convention & Visitors Bureau v.
    Visitor's Servs., Inc., 28 F. Supp. 2d 947, 953
    (E.D. Pa. 1998) ..............................................................................25

Varnberg v. Minnick, 760 F. Supp. 315 (S.D.N.Y.
    1991) ............................................................................................33

Vizant Technologies, LLC v. Whitchurch, 2016 U.S.
    Dist. LEXIS 2112 at *74-75 (E.D. Pa. Jan. 8,
    2016) ......................................................................................39, 43

Weaver v. Franklin County, 918 A.2d 194 (Pa.
    Cmwlth. Ct. 2007) ......................................................................35

Williams v. Borough of West Chester, 891 F.2d 458,
    460 (3d Cir. 1989) ................................................................18, 22

Williams v. Gavin, 2016 U.S. App. LEXIS 3106 (3d
    Cir. Feb. 23, 2016) ......................................................................22

Yohe v. Yohe, 353 A.2d 417 (Pa. 1976) ..................................................42

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(6) ..........................................................................4

Fed. R. Civ. P. 17 ................................................................................30

Fed. R. Civ. P. 56 ...........................................................................2, 3,
                                                                                     4, 8,
                                                                                     17, 43

Fed. R. Civ. P. 56(a) ............................................................................17

5025251

## I.     PRELIMINARY STATEMENT[1]

In this action against Defendant, Saint Charles Borromeo Catholic Seminary (hereinafter "St. Charles") and Main Line Health Systems (hereinafter "Main Line"), Plaintiff William Burris (hereinafter "Plaintiff or "Burris") alleges that he had been in negotiations with St. Charles for the purchase of St. Charles' Property located in Lower Merion Township, Pennsylvania and that in the midst of those discussions between Plaintiff and St. Charles, Plaintiff invited Main Line to participate in the process and they [Plaintiff and Main Line] formed a "partnership" or "joint venture" of some kind to pursue the acquisition of the Parcel.[2] Plaintiff further alleges that Main Line thereafter engaged in "secret negotiations with St. Charles and ultimately reached an agreement of sale with St. Charles to permit Main Line to purchase the Parcel from St. Charles," thus supporting his purported claims against St. Charles for aiding and abetting breach of fiduciary duty (Count II), civil conspiracy (Count IV), constructive trust (Count IX), and permanent injunctive relief.

---

[1] For the purposes of a motion filed pursuant to Fed.R.Civ.P. 56, the Court must consider the evidence in the light most favorable to the non-moving party. *See e.g.*, Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). Nothing contained in these moving papers shall be construed as an admission by St. Charles of any factual allegations contained in Plaintiff's Complaint.

[2] St. Charles respectfully requests that this Honorable Court take judicial notice of the fact that the Pennsylvania Department of State, Corporation Bureau website reveals that there is no such partnership between Burris and Main Line  registered to do business in the Commonwealth of Pennsylvania. *See* https://www.corporations.pa.gov/search/corpsearch.

St. Charles moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 because there is no genuine dispute as to any fact that could affect the outcome of the case under the substantive law of Pennsylvania. Plaintiff is unable to even establish the threshold facts required to prove any of the claims raised in Counts II, VIII, IX, and IX [sic] against St. Charles. Rather, the uncontroverted evidence, including documents authored by Plaintiff and Plaintiff's counsel, belie the claims raised by Plaintiff in the Complaint regarding the existence of any partnership between Plaintiff and Main Line, let alone the existence of any partnership that St. Charles was made aware of by Plaintiff. Those documents admit that there was no such partnership. As a result, there was no fiduciary duty owed by Main Line to Burris. Plaintiff cannot sustain a cause of action for breach, or for aiding and abetting a breach, of a non-existent obligation. Likewise, Plaintiff's claim for civil conspiracy fails as a matter of law for lack of a predicate tort. Based on the clear documentary evidence, no reasonable jury could find in Plaintiff's favor on any of the charges against St. Charles. Moreover, the Plaintiff has no plausible cause of action of his own against St. Charles.

For the reasons stated herein and more fully described below, St. Charles respectfully requests that this Honorable Court enter summary judgment in its favor pursuant to Fed. R.Civ.P. 56.

5022696

## II.   STATEMENT OF PROCEDURAL HISTORY AND FACTS

### A.   <u>Procedural History</u>

On December 21, 2015, Plaintiff and William Burris Construction Company (hereinafter <u>collectively</u> "BCC") filed a Writ of Summons against the Defendants named in the above captioned matter in the Court of Common Pleas, Montgomery County at C.C.P Docket No. 2015-32594 ("State Court Action").[3]  *See* Exhibit "A" attached hereto.[4] On even date, BCC filed a *lis pendens* against Saint Charles' real property located in Lower Merion Township, Montgomery County, Pennsylvania. Within the *lis pendens* counsel for BCC certified (albeit erroneously) to the State Court that "[the] action involves a dispute and request for determination of true

---

[3] When resolving a motion under Federal Rule of Civil Procedure 56, just as with a motion to dismiss, a court may properly look at public records, *including judicial proceedings*, in addition to the allegations in the complaint. *See* Jet 1 Ctr., Inc. v. City of Naples Airport Auth., 319 B.R. 11 (Bankr. M.D. Fla. 2004); Frederick v. Southeastern Penna. Transp. Auth., 892 F. Supp. 122 (E.D. Pa. 1995).  *See also* Macauley v. Estate of Nicholas, 7 F. Supp. 3d 468, 478 n.7 (E.D. Pa. 2014) (*quoting* Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 256 n.5 (3d Cir. 2006)). Relevant state court documents from related proceedings are included within this ambit. O'Boyle v. Braverman, No. 08-3865, 337 Fed. App'x 162, 165 (3d Cir. July 15, 2009) ("[I]t was not improper for the District Court to take judicial notice of Tennessee court documents in deciding the Rule 12(b)(6) motion at issue.").

Here, there are at least three categories of documents that this Court may consider on this motion for summary judgment: (1) documents upon which claims in Mr. Burris' complaint are based; (2) documents explicitly relied upon by Mr. Burris; and (3) Pennsylvania state court documents that are a matter of the public record, having been filed in the Court of Common Pleas for Montgomery County. St. Charles respectfully requests the Court to take judicial notice of the State Court documents.

[4] This document is a matter of public record.  St Charles attached this document as Exhibit "A" to its Motion for Injunction on January 8, 2016 and is located at docket entry 7.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

5022696

ownership interests in and to this Property in an action currently pending in the

Court of Common Pleas, Montgomery County, Pennsylvania." A true and correct

copy of the December 21, 2015 *lis pendens* is attached hereto as Exhibit "B".[5,6]

On December 22, 2015, BCC's counsel prepared a document captioned

"Notice of Pre-Complaint Discovery Pursuant to Rule 4007.1(c) and Notice of Pre-

Complaint Request for Production of Documents Pursuant to Rule 4007.1(d)(1)

("Discovery Notice"), a true and correct copy of which is attached as Exhibit "D".[7]

Included in the Notice was a brief statement in which it is certified that (a) [The

Parties] had "[begun] to discuss **the possibility** of BCC acquiring [a 41.1 acre

parcel of land owned by St. Charles located at 100 East Wynnewood Road,

Wynnewood Pennsylvania 19096, having a Montgomery County Parcel

Identification Number of 40-00-67932-00-5, defined as the "Parcel"] to purchase

---

[5] The Deed referenced within BCC's *lis pendens* is a hand written Deed dated December 23, 1911 between The Most Reverend Edmond F. Prendergast, Archbishop of Philadelphia and The Philadelphia Theological Seminary of Saint Charles Borromeo, recorded in the Montgomery County Recorder of Deeds Office at 667-196, a true and correct copy of which is attached hereto as Exhibit "C". As is evidenced by public records available in the Montgomery County Recorder of Deeds Office, the Property is and remains titled in St. Charles' name as of the date that BCC's counsel certified that "[the state court] action involves a request for true ownership interests in and to this Property" (*See* Exhibit "B"), and further continues to remain titled in the name of St. Charles as of the date of the filing of the within Motion.

[6] This document is a matter of public record. St Charles attached this document as Exhibit "B" to its Motion for Injunction on January 8, 2016 and is located at docket entry 7. *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

[7] This document is a matter of public record. St Charles attached this document as Exhibit "D" to its Motion for Injunction on January 8, 2016 and is located at docket entry 7. *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

and/or lease the Parcel for development and operation of a planned skilled nursing facility; (b) in the midst of the discussions between BCC and St. Charles, BCC invited Main Line to participate in the potential purchase, and they [BCC and Main Line] formed a partnership to pursue the acquisition of the Parcel and (c) Main Line engaged in "secret negotiations with [St. Charles] and ultimately reached an agreement of sale with [St. Charles] to permit Main Line to purchase the Parcel from [St. Charles]." (Emphasis added).

On January 8, 2016, St. Charles filed an "Emergency Motion for Preliminary Injunctive Relief and Additional Relief In The Form of Declaratory Judgment" ("Motion for Injunction") in response to Burris' State Court Action. On January 13, 2016, counsel for BCC filed an "Amended *Lis Pendens*" that certified to the State Court, in relevant part, as follows:

> Plaintiffs do not intend this Praecipe to preclude or effect any sale or other transaction that does not involve the Main Line Entities and others as set forth herein, and Plaintiffs agree that entities other than Main Line Entities and others set forth herein may purchase or acquire all or any portion of the Real Property referenced in this Praecipe without such purchase or acquisition being subject to any claim of Plaintiffs in this lawsuit. The Praecipe to Enter Lis Pendens filed in this action on December 21, 2015 is hereby amended and restated as set forth herein.

*See* Exhibit "E" attached hereto.[8]

---

[8] This document is a matter of public record. Plaintiff filed this pleading on January 13, 2016 and is located at docket entry 12. *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

Oral argument on St. Charles' Motion for Injunction was held on January 15, 2016 before the Honorable Bernard A. Moore.  On January 19, 2016, the State Court issued an Order striking off Burris' *lis pendens*.  *See* Exhibit "F" attached hereto.[9] On January 22, 2016, the trial court issued a second Order relating to St. Charles' Motion for Injunction directing the Court Administrator to "relist the same for one-half day on the equity emergency list."  *See* Exhibit "G" attached hereto.[10]

On February 3, 2016, BCC filed a "Praecipe to Discontinue" the State Court action.  *See* Exhibit "H" attached hereto.[11] On the same date, Plaintiff individually filed the above captioned Complaint before this Honorable Court. Document No. 1.

On February 10, 2016, St. Charles filed its "Petition to Strike Plaintiffs/Respondents' Praecipe to Discontinue and/or Imposition of Sanctions against Plaintiffs/Respondents" ("Petition to Strike") in the State Court Action.  On February 16, 2016, the State Court issued a Rule to Show Cause why St. Charles' Petition to Strike should not be granted, <u>with a Rule Return date of March 14,</u>

---

[9] This document is a matter of public record and is located at docket entry 23.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

[10] This document is a matter of public record and is located at docket entry 28.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

[11] This document is a matter of public record and is located at docket entry 30.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

5022696

<u>2016</u>.  *See* Exhibit "I" attached hereto.[12] (Emphasis added).  Thus, St. Charles'
Petition to Strike is still pending final adjudication by the Trial Court as of the date
and time of the filing of the within Motion.

Counsel for the Parties in the above captioned matter participated in a Rule
26 conference call on February 10, 2016 per Order of Court, and a Joint Rule 26
Report was faxed to the Court on February 17, 2016.  On February 10, 2016, the
undersigned counsel sent a Rule 11 letter to Plaintiff's counsel.  As of the date and
time of the filing of the within Motion, no response to said Rule 11 letter has been
received from Plaintiff's counsel.

Counsel for the Parties participated in an Initial Conference on February 19,
2016.  Initial Disclosures were exchanged by counsel for the Parties on February
26, 2016.

St. Charles and Main Line filed separate Motions to Dismiss Plaintiff's
Complaint on March 15, 2016. A Case Discovery Conference was held before The
Honorable Gene E.K. Pratter on March 17, 2016.  Judge Pratter issued an Order
later that same day in which the Defendants were directed to refile their Motions to
Dismiss as Motions for Summary Judgment under Rule 56 "given the numerous
factual exhibits attached."

---

[12] This document is a matter of public record and is located at docket entry 35.  *See* Montgomery
County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

**B.**  **Factual Allegations**

St. Charles is the legal owner of property located at 100 Wynnewood Road in Lower Merion Township (the "Property"). The Property consists of approximately 71.7 acres located between Wynnewood Road and Lancaster Avenue in Wynnewood, Pennsylvania. Since the 1870's, the Property has been generally used as a site for theological studies to prepare students for the priesthood. *See* Declaration of Stephen P. Dolan, Jr., Chief Financial Officer of St. Charles ¶1, attached hereto as Exhibit "J".

In or around the fall of 2013, St. Charles determined that it wished to subdivide and sell a portion of the Property known as the "Lower Campus" which is comprised of an existing three-story, 305,500 square foot seminary and educational residence, the Saint Martin Chapel, and a historic Bell Tower on approximately 41.1 acres (the "Parcel"). *See* Declaration of Stephen P. Dolan, Jr. ¶3.[13]  Between November 2013 and December 2015, St. Charles met with multiple prospective buyers for the Parcel who were specifically vetted and registered by St. Charles' exclusive broker, Holliday Fenoglio Fowler, L.P., ("HFF") and from whom St. Charles and HFF received signed "Confidentiality and Conditions Offering Agreements" (hereinafter "Confidentiality Agreement"), including one signed by Burris on behalf of BCC on November 7, 2013. *See* Exhibit "K"

---

[13] *See also*, Complaint ¶16.

attached hereto.[14]  At no time was any potential purchaser ever advised that they

were in "exclusive" negotiations with St. Charles. *See* Declaration of Stephen P.

Dolan, Jr. ¶7.  To the contrary, the Confidentiality Agreement specifically provides

as follows:

> [Plaintiff] acknowledges that the Property has been offered for
> sale subject to the withdrawal of the Property from the market
> at any time or rejection of any offer because of terms thereof, or
> for any reason whatsoever, without notice, as well as the
> termination of discussions with any party at any time without
> notice for any reason whatsoever.

*See* Exhibit K at ¶6.

On October 29, 2014, BCC submitted on Burris Construction Company

letterhead its response to the St. Charles Buyer Qualification Questionnaire

("BQQ"), copies of which are attached to Burris's Complaint as Exhibit "1" and to

this Memorandum as Exhibit L.[15]  Main Line Health is not identified as a party to

the Burris Construction Company BQQ.  Rather, in response to St. Charles'

question, "what decision maker(s) from your organization and equity source(s)

have visited the Property," Burris Construction Company represents "William G.

Burris, Jr., William G. Burris, III, and Kevin Breslin have visited the project on a

number of occasions and no other property visits will be required prior to our

---

[14] This document is a matter of public record.  St Charles attached this document as Exhibit "F"
to its Motion for Injunction on January 8, 2016 and is located at docket entry 7.  *See*
Montgomery County Online Docket, Case No. 2015-32594, available at
https://courtsapp.montcopa.org.

[15] Burris explicitly relies upon the BQQ in his Complaint.  *See* Complaint, ¶¶ 29, 30, 34, 35.

commitment to purchase." Finally, in response to the St. Charles' question, "How many other deals are you currently working on," Burris Construction Company represents: "Finally, we are negotiating the finer points of a partnership with Main Line health [sic] in our pursuit of the instant proposal.[16]

On or about November 24, 2014, St. Charles (at the special insistence and request of HFF, as well St. Charles' Board Members) requested that BCC provide it with additional financial statements/documentation in light of concerns that St. Charles had with BCC's previously submitted financial information. Neither Burris nor BCC ever provided the requested financial information. *See* Affidavit of Stephen P. Dolan, Jr. ¶8. Instead, BCC sent HFF a proposed Letter of Intent ("LOI") on or about December 26, 2014, a true and correct copy of which is attached hereto as Exhibit "M".[17] St. Charles did not accept BCC's offer. *See* Declaration of Stephen P. Dolan, Jr. ¶8.

Burris alleges in his Complaint that "because [Defendant] Main Line was (and is) an owner of the land adjacent to the Parcel, Burris was encouraged by unnamed members of St. Charles' Board of Directors to meet with Main Line and

---

[16] In paragraph 35 of his Complaint, Burris quotes from the addendum to the BQQ wherein BCC proposes to retain the existing seminary building "in partnership with Main Line Health." That addendum does not purport to alter the admission in the body of the BQQ that it has not yet reached an agreement with Main Line Health.

[17] This document is a matter of public record. St Charles attached this document as Exhibit "G" to its Motion for Injunction on January 8, 2016 and is located at docket entry 7. *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

its President, John 'Jack' Lynch III ("Lynch")," and that in furtherance of said request Burris met with Lynch in June 2014.[18]  Burris further alleges in his Complaint that it was immediately following this meeting in June 2014 that "Burris and Main Line then became co-promoters of a partnership/joint venture/confidential relationship to acquire the Parcel for purposes of building and operating a post-acute care center on the Parcel,"[19] (despite the fact that the BQQ of October 2014 clearly states in relevant part "we are negotiating the finer points of a partnership with Main Line Health in our pursuit of the instant proposal,"[20] and further despite Burris' admission in his Complaint ¶70 that "the parties were unable to create any potential relationship to proceed in the development envisioned by the parties in the Burris-Main Line Fiduciary Venture"). (Emphasis added).

While Burris alleges in his Complaint that a partnership with Main Line had been formed and that St. Charles was aware of said alleged partnership,[21] the documents prepared by Burris and submitted to St. Charles belie these contentions. Specifically, on June 23, 2015, Burris sent a letter to St. Charles on "Atrium Health and Senior Living" ("Atrium") letterhead.  In his letter, Burris represented himself

---

[18] *See* Complaint ¶¶20, 23.

[19] *See* Complaint ¶26.

[20] *See* Complaint Exhibit 1, page 13, last sentence.

[21] *See* Complaint ¶28.

5022696

for the first time to St. Charles as "Co-CEO/Chairman of Atrium Health & Senior

Living," rather than as representative of BCC. *See* Declaration of Stephen P.

Dolan, Jr. ¶12. A true and correct copy of the June 23, 2015 letter is attached

hereto as Exhibit "N."[22]  In his letter, Burris specifically states as follows:

> **Burris Construction Company merged with Atrium Health
> & Senior Living in August 2014**.  My family converted 80%
> equity in Burris to 20% equity in Atrium.  The resulting
> company has a solid operating history of healthcare centers for
> 29 years and, of course, significant development expertise in
> that area.

*See* Id.  (Emphasis added).

The June 23, 2015 letter from Burris reflects that Burris was making an offer

for the Parcel as an agent of Atrium Health & Senior Living, not Burris

Construction Company.[23] Moreover, the letter is void of any reference whatsoever

to a purported partnership with Main Line. *See* Id.

On June 24, 2015, Burris as "Co-CEO/Chairman Atrium Health and Senior

Living", sent another written communication to St. Charles (via email) in which

Burris states "Please accept our letter and company profile attached in response to

yours."  A review of the Company "profile" attached to Burris' June 24, 2015

---

[22] This document is a matter of public record.  St Charles attached this document as Exhibit "K"
to its Motion for Injunction on January 8, 2016 and is located at docket entry 7.  *See*
Montgomery County Online Docket, Case No. 2015-32594, available at
https://courtsapp.montcopa.org.

[23] *Compare* Exhibit "K" wherein Burris represented to St. Charles and HFF that he was only
representing BCC pursuant to the terms of paragraph 4 of the Confidentiality Agreement.

email reveals that it is likewise void of any reference to Main Line. A true and correct copy of the June 24, 2015 email and "company profile" attachment is attached hereto as Exhibit "O".

According to Burris on July 17, 2015, "[he] offered $25,000,000.00 to acquire the Parcel from the Seminary to pursue the project for the Burris-Main Line Fiduciary Venture."[24] The July 17, 2015 letter is on "Atrium Health" letterhead and Burris again signed the same as "Co-CEO/Chairman Atrium Health & Senior Living." *See also* Declaration of Stephen P. Dolan, Jr. ¶¶12, 14. Again, the July 17, 2015 letter from Burris underline makes no reference to a purported partnership with Main Line.  A true and correct copy of the July 17, 2015 letter is attached hereto as Exhibit "P." [25]

Burris avers that when he did not receive word on the pending offer that he wrote to Bishop Timothy Senior ("Senior"), the Rector of St. Charles via email dated December 4, 2015.[26] As evidenced by the December 4, 2015 email

---

[24] *See* Complaint ¶ 48.  This letter is explicitly relied upon by the Plaintiff in his Complaint.

[25] This document is a matter of public record.  St Charles attached this document as Exhibit "L" to its Motion for Injunction on January 8, 2016 and is located at docket entry 7.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

[26] *See* Complaint ¶60.

correspondence attached hereto as Exhibit "P"[27] (and sent from Burris' email account at Atrium), Burris made no reference to the existence of a partnership with Main Line and instead stated, "I understand that <u>one of my competitors</u> may be the new stalking horse for this deal." (Emphasis added).

On or about December 11, 2015, St. Charles advised BCC, through Burris, that it was in a period of exclusive discussion with Main Line.[28]  *See* Declaration of Stephen P. Dolan, Jr.¶12.  Shortly thereafter, and on December 21, 2015, BCC filed a Writ of Summons against St. Charles and Main Line Health Systems and a *Lis Pendens* against St. Charles in the Court of Common Pleas, Montgomery County.[29]

---

[27] Burris' Affidavit, together with its attachments is a matter of public record.  BCC attached this document as Exhibit "A" to its Reply in Opposition to St. Charles' Motion for Injunction on January 14, 2016 and is located at docket entry 15.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at <u>https://courtsapp.montcopa.org</u>.

[28] *See* Complaint ¶61.

[29] As previously stated herein in Procedural History, BCC subsequently withdrew its State Court Action on the same day Burris filed the above captioned action.

5022696

III.  **ISSUES PRESENTED**

A. **SHOULD SUMMARY JUDGMENT BE ENTERED IN FAVOR OF ST. CHARLES ON COUNT II BECAUSE THE UNCONTROVERTED DOCUMENTARY EVIDENCE SHOWS THAT PLAINTIFF IS UNABLE TO ESTABLISH THE ELEMENTS OF A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY?**

*Suggested answer in the affirmative.*

B. **SHOULD SUMMARY JUDGMENT BE ENTERED IN FAVOR OF ST. CHARLES ON COUNT VIII BECAUSE THE UNCONTROVERTED EVIDENCE SHOWS THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND PLAINTIFF IS UNABLE TO ESTABLISH THE ELEMENTS ESSENTIAL TO A CLAIM FOR CIVIL CONSPIRACY?**

*Suggested answer in the affirmative.*

C. **SHOULD SUMMARY JUDGMENT BE ENTERED IN FAVOR OF ST. CHARLES ON COUNT IX BECAUSE PLAINTIFF FAILS TO STATE A CLAIM IN THAT THERE IS NO CAUSE OF ACTION FOR "CONSTRUCTIVE TRUST"?**

*Suggested answer in the affirmative.*

D. **SHOULD SUMMARY JUDGMENT BE ENTERED IN FAVOR OF ST. CHARLES ON PLAINTIFF'S REQUEST FOR INJUNCTION BECAUSE PLAINTIFF FAILS TO PLEAD AN ENTITLEMENT TO ANY INJUNCTIVE RELIEF?**

*Suggested answer in the affirmative.*

E. **SHOULD PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES BE SUMMARILY DISMISSED BECAUSE THE COMPLAINT FAILS TO SET FORTH A CLAIM FOR SUCH RELIEF?**

*Suggested answer in the affirmative.*

5022696

## IV.   LEGAL ARGUMENT

### A.   <u>LEGAL STANDARD FOR A FED.R.CIV.P. 56 MOTION</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter. Rather, it determines whether or not there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Id</u>. at 247-8. (emphasis in original). Asserted disputes of fact are "material" if their resolution could affect the outcome of the case under the applicable substantive law, and are "genuine" if the evidence bearing on the disputed facts is such that a reasonable jury could find for the non-moving party.  <u>Id.</u>, at 248; <u>Hozier v. Midwest Fasteners, Inc.</u>, 908 F.2d 1155, 1158 (3d Cir. 1990).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

323 (1986). It can meet its burden by "pointing out…that there is an absence of evidence to support the non-moving party's claims." Id. at 325.

Once the moving party has demonstrated the absence of genuine issues of material fact, the burden shifts to the non-moving party to "make a showing sufficient to establish the existence of every element essential to his case." Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).  If the party against whom the motion is made fails to establish sufficiently the existence of an element essential to that party's case and on which that party bears the burden of proof at trial, then judgment should be entered in the moving party's favor.  Celotex, 477 U.S. at 322 (1986).

The non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. Anderson, 477 U.S. at 249; Celotex, 477 U.S. at 325; Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Rather, there must be enough evidence on which a jury could reasonably find for the nonmovant. Anderson, 477 U.S. at 252.  The non-moving party must go beyond its pleadings, and establish specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 247, 256.

The United States Supreme Court has also recognized that: "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by

18

the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007) (reversing denial of summary judgment because nonmoving party's version of events was "so utterly discredited by the record"). Here, the Plaintiff has fabricated the existence of a partnership with Main Line, going so far as to name his creation the "Burris-Main Line Fiduciary Venture" that flies in the face of the overwhelming documentary evidence – documents authored by Plaintiff – establishing beyond question that no such partnership ever materialized. St. Charles is entitled to summary judgment against the Plaintiff because the essential facts cannot be genuinely disputed. Burris has no viable claim against St. Charles and no reasonable jury could find in his favor.

## B.   THE SUMMARY JUDGMENT STANDARD AS APPLIED TO THIS CASE

In Celotex, the Supreme Court held that a party moving for summary judgment need not negate the other party's case. Celotex, 477 U.S. at 323. Rather, the moving party can discharge its burden by demonstrating the absence of an essential element of the opponent's case, who bears the burden of proof at trial. That demonstration can be made even without the submission of affidavits, by, as in the instant case, reliance on the pleadings, documents and admissions.  Id.  St. Charles can meet its burden on this motion by "showing" or "pointing out" the lack

of evidence to support Plaintiff's case.  Id. *See also*, Matsushita Electric Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574 (1986).

Here, in light of the uncontroverted documentary evidence, consisting of documents/writings prepared by Plaintiff himself, and Plaintiff's admissions, Burris can produce no credible evidence to advance his claims against St. Charles. For example, he has repeatedly admitted that no partnership with Main Line ever materialized (*see* e.g., ¶ 70 of Plaintiff's Complaint).  Plaintiff cannot now manufacture a genuine issue of material fact by arranging for statements, or affidavits, or even deposition testimony that contradicts the documentary evidence by suggesting that the terms of a partnership agreement (or some other fiduciary relationship) were finalized.  *See* Transamerica Occidental Life Ins. Co., v. Total Sys., 513 Fed. Appx. 246 (3d Cir. 2013); Iseley v. Beard, 2009 U.S. Dist. LEXIS 52014 (M.D. Pa. June 15, 2009); Dantzler v. Beard, 2007 U.S. Dist. LEXIS 96919 (W.D. Pa. Dec. 6, 2007). *See also*, Matsushita, *supra*.

As the Court explained in Dantzler:

> Such conclusory allegations in Plaintiff's affidavits, without more, in the face of such documentary evidence, are insufficient to create a genuine issue of material fact. *See*, e.g. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the non-moving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); Seddon v. Maytag Corp., 2005 U.S. Dist. LEXIS 49111 ("The Court will not credit a self-serving and contradictory affidavit that is clearly and inherently

> inconsistent with documentary evidence presented by the same party."); <u>Matter of Bevil, Bresler & Schulman, Inc.,</u> 94 B.R. 817, 822 n.4 (D.N.J. 1989)("While on summary judgment Hawthorne is entitled to all reasonable inferences from the facts it alleges, Herbst's allegations here have been contradicted by documentary evidence and therefore cannot be accepted as true.").

<u>Dantzler</u>, 2007 U.S. Dist. LEXIS at *34-35.  Thus, <u>Dantzler</u>, determined that Plaintiff's conclusory allegations that were contradicted by documentary evidence could not be accepted as true, and summary judgment was granted to Defendants. *See also*, <u>Transamerica</u> *supra*. (Third Circuit holding: "(the deposition testimony offered by Total Systems cannot defeat a motion for summary judgment when viewed in the light of the documentary evidence contradicting it; <u>Ben-Kotel v. Howard Univ</u>. 319 F.3d. 532, 536 (D.C. Cir. 2003) (summary judgment proper when two business records stating that an employee was hired in 1998 were contradicted only by vague deposition testimony).

　　Accordingly, St. Charles submits that the record in this case has been well-established by the documentary evidence and Plaintiff's admissions outlined above in the statement of facts.  In the basis of that record, St. Charles is entitled to summary judgment because Burris is both unable to proffer a genuine issue of material fact and is likewise unable to prove an essential element of his case, to wit: the existence of a fiduciary duty owed by Main Line.  Rather, this case is analogous to <u>Scott. v. Harris</u>, *supra*. where the respondent's version of events was

21

"so utterly discredited by the record" that no reasonable jury could have believed him.  <u>Scott</u>, 550 U.S. at 380.

For similar reasons, no further discovery is necessary or warranted in the case at bar.  Any suggestion by Plaintiff that summary judgment would be "premature" without further opportunity for discovery should be rejected.  Cases in this Circuit have clearly established that it is within the district court's discretion to grant summary judgment where the plaintiff has not availed himself of discovery opportunities and/or otherwise has failed to produce evidence that created a genuine issue of material fact for trial.  *See* <u>Dowling v. Philadelphia</u>, 855 F.2d 136 (3d Cir. 1988) (approving district court's grant of summary judgment where plaintiff failed to take any discovery); <u>Williams v. Gavin</u>, 2016 U.S. App. LEXIS 3106 (3d Cir. Feb. 23, 2016) (defendant's undisputed evidence demonstrated summary judgment was proper without further discovery); <u>McKenna v. Healthease, Inc.</u>, 573 Fed. Appx. 190 (3d Cir. 2014) (summary judgment affirmed where no justification for failure to conduct discovery nor explanation to comply with Rule 56(d)); <u>Townsend v. Hall</u>, 2015 U.S. Dist. LEXIS 131280 (M.D. Pa. Aug. 12, 2015) (Court rejecting plaintiff's contention that summary judgment should not be granted because of lack of discovery);  <u>AVS Foundation v. Eugene Berry Enterprise, LLC</u>, 2011 U.S. Dist. LEXIS 139827 (W.D. Pa. Dec. 6, 2011) (summary judgment granted where no discovery could change the disposition of

any genuine fact); <u>Federal Ins. Co. v. Sandusky</u>, 2013 U.S. Dist. LEXIS 29740

(M.D. Pa. Mar. 1, 2013) (summary judgment not premature and further discovery

not material to court's conclusion).

Plaintiff has not taken even one step to seek discovery from St. Charles in

this case since the filing of the above captioned Complaint.  This is so despite the

fact that during the March 17, 2016 conference with the Court, Plaintiff was

advised by the Court to request discovery if he thought it necessary and to follow it

with a motion to compel if warranted.  Nevertheless, Plaintiff has failed to serve

any discovery requests in this action.  Even so, the documents in this case and

admissions made by Plaintiff have generated a record of the material facts.  As a

result, no discovery would create a genuine issue of material fact; no discovery

would be sufficient to contradict the established documentary evidence; no

discovery could alter the Court's determination of this motion.

Here, similar to <u>Dowling v. Philadelphia</u>, *supra.*, St. Charles has identified

documentary evidence and admissions to "amply establish" that there was no

partnership between Plaintiff and Main Line, there was no fiduciary duty owed to

Plaintiff, and St. Charles had no knowledge of a breach of fiduciary duty by Main

Line.  855 F.2d at 141.  Plaintiff is not able to produce evidence to refute these

points, and cannot meet his burden of proof in this case to warrant a trial.  There is

no genuine issue of material fact relative to Plaintiff's cause(s) of action and St.

Charles is entitled to judgment as a matter of law.

### 1.    Count II of Plaintiff's Complaint Fails to State a Claim for "Aiding and Abetting Breach of Fiduciary Duty"

Count II of the Complaint purports to set forth a cause of action against St.

Charles for "aiding and abetting Main Line's breach of its fiduciary relationship"

with Burris[30].  Throughout the Complaint, Burris cavalierly refers to a

"confidential" and/or "fiduciary" relationship existing between Burris and/or BCC

and Main Line despite the overwhelming documentation to the contrary.  Before

analyzing Burris' claim further, it is appropriate to consider the definition of a

fiduciary relationship. To state the obvious, there can be no breach of fiduciary

duty –nor a claim for aiding and abetting such a breach—in the absence of a

fiduciary relationship.

Breach of fiduciary duty claims focus on the existence of a confidential

relationship – one which shows trust and reliance on one side, and a corresponding

opportunity to abuse that trust for personal gain on the other.  In Re Scott's Estate,

316 A.2d 883 (Pa. 1974). Such a relationship requires that the parties do not deal

on equal terms.  Rather, a fiduciary relationship is "characterized by

'overmastering influence' on one side or 'weakness, dependence, or trust,

---

[30] *See* Complaint ¶88.

justifiably reposed' on the other side."   eToll, Inc. v. Elias/Savion Advertising,

Inc., 811 A.2d 10, 23 (Pa. Super. 2002) (citing Basile v. H&R Block, Inc., 777

A.2d 95, 101 (Pa. Super. Ct. 2001)).  One key fact necessary to establish a

fiduciary relationship is that the "the agent has authority to alter the principal's

relationships with third parties, such as binding the principal to a contract."  Id.

Specifically, entering into an arms-length commercial agreement does not create a

fiduciary relationship in Pennsylvania, "however important its performance may be

to the success of one's business."  Id.; Valley Forge Convention & Visitors Bureau

v. Visitor's Servs., Inc., 28 F. Supp. 2d 947, 953 (E.D. Pa. 1998).  Thus, "[i]n the

business context, a confidential relationship is formed only if one party surrenders

substantial control over some portion of his affairs to the other." Devon IT, Inc. v.

IBM Corp., 805 F. Supp. 2d 110, 129-30 (E.D. Pa. 2011) (citations omitted).

Even assuming all the factual allegations in the Complaint are true, as

tempered by the actual documents relied upon, Burris has failed to demonstrate he

had a fiduciary relationship with Main Line as a matter of law.  The Complaint

contains no allegations of a truly unique relationship between Plaintiff and Main

Line to distinguish it from other commercial projects.  There is no allegation that

Burris surrendered "substantial control" to Main Line.  As a matter of public

record, the BQQ attached to Burris' Complaint as Exhibit 1 states that Burris

Construction Company (and its related entity, to wit: Atrium  Health) is a

25

sophisticated business entity, with a substantial portfolio of commercial properties and operations with significant experience in large scale multimillion dollar projects. Burris, as an officer of Burris Construction Company and/or Atrium, had essentially equal if not superior bargaining power.  Rather than surrendering control, in fact, it is clear from the allegations of the Complaint that Burris maintained his own agenda and directed the process involved in making an offer on the Parcel on behalf of BCC and/or Atrium. Thus, as an initial matter, there was no fiduciary relationship between Burris and Main Line.

The documents and emails exchanged between Burris and Main Line that are attached to Burris' Affidavit filed in the Montgomery County Court of Common Pleas clearly belie Plaintiff's claim that any "partnership had been formed with Main Line," (let alone a partnership identified in ¶26 of the Complaint as the "Burris-Main Line Fiduciary Venture"). They further belie any contention that St. Charles was aware of this phantom partnership.  *See* e.g., BA 016 (refers to "potential partnership"); BA 023-024 (reference to "possible joint venture"); and BA 040 (wherein Burris specifically acknowledges in writing (on "BCC letterhead") that no partnership with Main Line existed at the time of the

submission of the Buyer Qualification Questionnaire to St. Charles) (at ¶15 "We are negotiating the finer points of a partnership…").[31]

Likewise, the documents prepared by Burris, (coupled with the emails exchanged between Plaintiff and Main Line) clearly refute the contention that there was some kind of "partnership" between Burris and Main Line.  Indeed, even the BQQ attached to the Complaint as Exhibit 1 reveals that (a) it was submitted by Burris Construction Company - not William Burris, the named plaintiff; (b) it identifies the "decision makers" in charge of submitting the BQQ as "William G. Burris, Jr. and William G. Burris, III and Kevin Breslin" (the Managing Member of Atrium)- no one from Main Line is identified; and (c) it includes an affirmative statement that a partnership with Main Line did not in fact exist at the time the BQQ was submitted to St. Charles.  In light of the same, Counts II, VIII, IX, and improperly numbered Second Count IX of the Complaint cannot be sustained.[32]

Finally, the inclusion of the judicial admission in ¶70 of the Complaint clearly evidences the fact that there was no "partnership" with Main Line as

---

[31] Burris' Affidavit, together with its attachments (that are bates labeled "BA"), is a matter of public record.  BCC attached this document as Exhibit "A" to its Reply in Opposition to St. Charles' Motion for Injunction on January 14, 2016 and the document is located at docket entry 15.  *See* Montgomery County Online Docket, Case No. 2015-32594, available at https://courtsapp.montcopa.org.

[32] Burris' correspondence dated June 23, 2015 (Exhibit "N"), June 24, 2015 (Exhibit "O") and July 17, 2015 (Exhibit "P") (which make no reference whatsoever to Main Line but instead address the "merger" of BCC with Atrium and the resulting partnership between those two (2) entities), effectively negates any claims that Plaintiff  was "in a partnership with Main Line."

27

Plaintiff specifically alleges that he decided to withdraw the same action originally filed in State Court because "the parties were unable to create any potential relationship to proceed in the development envisioned by the parties in the [alleged] Burris-Main Line Fiduciary Venture . . ." (emphasis added).

Even assuming that a fiduciary relationship existed (which St. Charles does not concede) a cause of action for aiding and abetting the breach of a fiduciary duty is the subject of some debate. The Supreme Court of Pennsylvania has not formally recognized a cause of action for aiding and abetting a breach of fiduciary duty. Official Committee of Unsecured Creditors of Allegheny Health Education and Research Foundation v. PriceWaterhouseCoopers, LLP, 605 Pa. 269, 989 A.2d 313, 327 n.14 (Pa. 2010). However, the Commonwealth Court of Pennsylvania has held that a cause of action exists "for aiding and abetting a breach of fiduciary duty pursuant to Section 876[b] of the Restatement (Second) of Torts." Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Cmwlth. 2003). Based on the decision in Koken, some federal district judges have predicted that the Pennsylvania Supreme Court would recognize this cause of action. *See e.g.*, Reis v. Barley, Snyder, Senft & Cohen, LLC, 484 F.Supp.2d 337, 350-352 (E.D.Pa. 2007) (Gardner, J.). Other judges have disagreed. *See e.g.* Daniel Boone Area School District v. Lehman Bros., Inc., 187 F.Supp. 2d 400 (W.D. Pa. 2002) (D. Brooks Smith, Chief Judge).

Assuming *arguendo* that the cause of action for "aiding and abetting breach of fiduciary duty" exists, its elements are:

> (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach.

<u>Koken</u>, 825 A.2d at 732; <u>Reis</u>, 484 F.Supp.2d at 350-351; *See also*, <u>Reis v. Barley, Snyder, Senft & Cohen, LLC</u>, 667 F.Supp.2d 471, 492 (E.D.Pa. 2009).

In other words, "[i]n order to be found liable for aiding and abetting a breach of a fiduciary duty, one must demonstrate that the party knew that the other's conduct constituted a breach of a fiduciary duty and gave substantial assistance or encouragement to the other in committing that breach." <u>Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.</u>, 296 F.3d 164, 174 (3d Cir. 2002) (claim for aiding and abetting breach of fiduciary duties under ERISA). *See also*, <u>Synthes, Inc. v. Emerge Med., Inc.</u>, 25 F. Supp. 3d 617 (E.D. Pa. 2014)(granting summary judgment in favor of defendants on aiding and abetting a breach of fiduciary duty claim).

Regarding the first element, Plaintiff has failed to establish even the existence of a fiduciary duty owed to him by Main Line.  Indeed, Burris cannot even provide a "scintilla of evidence" that a "partnership" or "joint venture" or any other relationship that gave rise to a fiduciary duty existed between Plaintiff and Main Line.  To the contrary, the documentary evidence that such a relationship

never existed is overwhelming.  Since Plaintiff cannot provide credible proof of a

fiduciary relationship, there can be no fiduciary duty owed by Main Line, and

without a fiduciary duty, there obviously can be no breach thereof.

Further, even if Burris made a showing of a fiduciary duty, Plaintiff has

done nothing to "clarify for the Court precisely what actions constituted a breach

of fiduciary duty by [Main Line]."  Synthes, 25 F. Supp. 3d at 674. Burris likes

making reference to "secret negotiations" between St. Charles and Main Line, as if

"secret" somehow transforms routine arms-length business discussions into

something improper.  For that matter, the negotiations were no more "secret" than

those St. Charles maintained with any potential buyer, including the various

communications with Plaintiff (acting on behalf of BCC and/or Atrium).[33]

Negotiations concerning the sale of the Parcel were required to be confidential –

thus the Confidentiality Agreement signed by all buyers.  In fact, it is ironic that

---

[33] All of Burris's communications with St. Charles, including the BQQ, the Letter of Intent and
other correspondence relating to the potential acquisition and development of the Parcel, were
submitted on behalf of Burris Construction Company or Atrium, not Burris individually.  Even
assuming *arguendo* that discussions between St. Charles and Main Line led to an agreement of
sale for the Parcel, the "real parties in interest" (*See* F.R.C.P. 17) who would be impacted would
appear to be Burris Construction Company and/or Atrium – not Burris, individually.  A
"favorable decision" regarding the claims asserted in this litigation could only directly benefit
Burris Construction Company and/or Atrium, not Burris individually.  Burris, individually, was
not a party to any of the discussions that form the basis of the Complaint presently at issue.
Because Burris was not a party, he does not have a legally sufficient interest to qualify as the
proper party entitled to obtain judicial resolution of the matter he seeks to challenge.  *See* KBT
Corp. v. Ceridian Corp., 966 F. Supp. 369, 373 (E.D. Pa. 1997) *citing* Chrysler Credit Corp. v.
B.J.M. Jr., Inc., et al., 834 F. Supp. 813 (E.D. Pa. 1993) ("it is axiomatic that a stockholder,
director, officer, or employer of a corporation has no individual right of action against third
persons for damages that result indirectly to the individual because of an injury to the
corporation").

Plaintiff accuses St. Charles of aiding and abetting a breach when it was St.

Charles who, as a professional courtesy, advised Burris of the Main Line

discussions in the first place.  *See* Stephen P. Dolan, Jr., Declaration ¶18.  Thus,

the first element of the cause of action has not been satisfied.

      The second element requires "actual knowledge" of the breach on the part of

St. Charles. *See*, Miles Farm Supply, LLC v. Helena Chemical Company, 595 F.3d

663, 666 (6th Cir. 2010); Invest Almaz v. Temple-Inland Forest Products

Corporation, 243 F.3d 57, 82-83 (1st Cir. 2001); Kolbeck v. LIT America, Inc.,

939 F.Supp. 240, 247 (S.D.N.Y. 1996) *aff'd*, 152 F.3d 918 (2d Cir. 1998).

      With regard to the knowledge element, Burris pleads only that St. Charles

"had knowledge of the fiduciary duties"[34] but fails to allege that St. Charles knew

of the breaches of fiduciary duty.  Such "threadbare recitals of the elements" do not

set forth "sufficient factual matter" to even survive a motion to dismiss let alone a

motion for summary judgment. *See* Fowler v. UMPC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  While Burris has nominally repeated the elements of the cause

of action (*see* ¶¶ 85-87 of Complaint), he fails to demonstrate or offer evidence

regarding how St. Charles would ever have "knowledge of the fiduciary duties

owed by Main Line" or even what the exact nature of the relationship was between

Burris and Main Line. Rather, the documents submitted by Burris (all of which

---

[34] *See* Complaint ¶85.

were submitted on behalf of BCC and/or Atrium) and the statements contained therein make clear that no partnership between Burris and Main Line ever materialized.  Thus, Burris is unable to plead the "how, when, and where" St. Charles would have gained knowledge of the breach and Burris cannot satisfy the second element of the cause of action. *See* Kolbeck, 939 F. Supp. at 246.

At most, Burris has pled that St. Charles was aware of some discussion between Burris and Main Line.  But that is a far cry from adequately alleging that St. Charles had actual knowledge of a fiduciary relationship or the manner in which the two parties were working together such that St. Charles would know what obligations, if any, were owed by Main Line to Burris and what conduct would constitute a breach thereof.  Burris never identified himself and/or BCC as a partner with Main Line in any communication with St. Charles or HFF (broker), nor did he ever provide a partnership agreement.  *See* Declaration of Stephen P. Dolan, Jr., ¶15.

As St. Charles indicated in its Statement of Facts, Burris was less than candid in his dealings with the Seminary, misrepresenting whether he was acting on behalf of Burris Construction Company or Atrium when communicating with St. Charles (and therein violating the Confidentiality Agreement).  In addition, he is at best inconsistent when referring to Main Line in the Complaint variously as "partner", "co-promoter", "joint venturer" –just as the Complaint makes reference

32

to "a joint venture/partnership/confidential relationship", then finally announcing the name "Burris-Main Line Fiduciary Venture," (*see* Complaint at ¶ 26).  As that title suggests, it has little connection to reality.

As for the third element of the claim, Burris is required to plead and prove the time, place, and manner of the alleged "substantial assistance" provided by St. Charles in aiding the breach of fiduciary duty in the particularity required by F.R.C.P 9(b).  <u>Varnberg v. Minnick</u>, 760 F. Supp. 315 (S.D.N.Y. 1991). This he also has failed to do.  Pleading substantial assistance specifically requires Plaintiff to show that the actions of the aider and abettor <u>proximately caused</u> the harm upon which the primary liability is predicated.  *See* <u>Kolbeck</u>, 939 F.Supp. at 247. Because St. Charles was not a fiduciary to Burris, nor did it have any contractual obligation to Burris or Main Line, any alleged failure to disclose discussions between St. Charles and Main Line "cannot give rise to aiding and abetting liability."  <u>Kolbeck</u>, 939 F. Supp. at 247.

Plaintiff has not established and is unable to establish:

- Plaintiff and Main Line entered into a partnership;

- Plaintiff and Main Line had a fiduciary relationship;

- Main Line owed Plaintiff a fiduciary duty;

- Main Line breached a fiduciary obligation owed to Plaintiff;

5022696

- St. Charles had actual knowledge of a fiduciary duty owed by Main Line to Plaintiff;

- St. Charles had actual knowledge of the breach of a fiduciary duty by Main Line;

- St. Charles gave substantial assistance or encouragement to Main Line to effect the breach; and

- Any action on the part of St. Charles proximately caused damage to Plaintiff.

Despite Plaintiff's wild speculation and conjecture to the contrary, the uncontroverted evidence proves the negative of each of the above points.  The uncontroverted evidence further shows beyond dispute that there is presently no agreement of sale for the Parcel between St. Charles and Main Line.

Accordingly, for all of the reasons stated above, Count II of Burris' Complaint fails to state a claim upon which relief can be granted and summary judgment should be entered for St. Charles.

### 2.    Count VIII of Plaintiff's Complaint Fails To State a Claim for Civil Conspiracy

Under Pennsylvania law, to recover for civil conspiracy, at a minimum, the following elements must be alleged: (1) a combination of two or more persons acting in concert; (2) with a common purpose to do an unlawful act or to do a

lawful act by unlawful means or for an unlawful purpose (i.e. an intent to injure);

(3) an overt act done in pursuance of the common purpose; and (4) plaintiff has

incurred actual legal damage.  *See* e.g. Corneal v. Jackson Twp., 313 F. Supp. 2d

457 (M.D. Pa. 2003), *aff'd*, 94 Fed. Appx. 76, 2004 U.S. App. LEXIS 7198 (3d

Cir. Pa. Apr. 13, 2004); Weaver v. Franklin County, 918 A.2d 194 (Pa. Cmwlth.

Ct. 2007).

   An "actionable civil conspiracy must be based on an existing independent

wrong or tort that would constitute a valid cause of action if committed by one

actor." Levin v. Upper Makefield Twp., 90 F. App'x 653, 667 (3d Cir. 2004), *cert*

*denied*, 543 U.S. 1035 (2004). Ultimately, "only a finding that the underlying tort

has occurred will support a claim for civil conspiracy." Alpart v. Gen. Land

Partners, Inc., 574 F. Supp. 2d 491, 506 (E.D. Pa. 2008) (*quotation marks omitted*);

*see also* Duffy v. Lawyers Title Ins. Co., 972 F. Supp. 2d 683, 698 (E.D. Pa. 2013)

("Absent a civil cause of action for a particular act, there can be no cause of action

for civil conspiracy to commit that  act."); Accurso v. Infra-Red Services, 119 F.

Supp. 3d 316, 327 (E.D. Pa. 2015) (Pratter, J.) ("defendants correctly point out that

an underlying tort is a predicate for liability for civil conspiracy").  To allege a

plausible claim of civil conspiracy, a plaintiff must make "factual allegations of

combination, agreement, or understanding among all or between any of the

defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged

chain of events." <u>Spencer v. Steinman</u>, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997) (*citation and internal quotation marks omitted*). It is not enough that the "end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." <u>Id</u>.

Finally, "[p]roof of malice, i.e., an intent to injure  is essential in proof of a conspiracy." <u>Commerce Bank/Pennsylvania v. First Union Nat. Bank</u>, 911 A.2d 133, 143 (*quoting* <u>Thompson Coal Co. v. Pike Coal Co.</u>, 412 A.2d 466, 472) (Pa. 1979). "[M]alice requires …that the *sole* purpose of the conspiracy was to injure the plaintiff," and that this intent was without justification.  <u>Doltz v. Harris & Assoc.</u>, 280 F.Supp. 2d 377, 389 (E.D. Pa. 2003) *(Emphasis original)*.  Because malice can only be found when the *sole* purpose of the conspiracy is to injure the plaintiff, a showing that a person acted for professional or business reasons, and not solely to injure the plaintiff, negates a finding of malice.  *See* <u>Bro-Tech Corp. v. Thermax, Inc.</u>, 651 F. Supp. 2d 378, 419 (E.D. Pa. 2009); <u>Thompson Coal Co.</u>, 412 A.2d at 472 (noting that the intent to injure must be absent justification).

Just as in <u>Bro-Tech</u>, the plaintiff's "case" here is "built on the theory that defendants acted for their business advantage and benefit."  <u>Bro-Tech</u>, 651 F. Supp. 2d at 419.  *See* <u>e.g.</u> ¶5 of Plaintiff's Complaint ("defendants entered into a secret agreement for Main Line to obtain the Parcel solely for its own benefit…"); ¶¶51, 53 (Main Line agreed to make an "unconditional" offer to purchase the

36

Parcel because that was what St. Charles wanted, and Burris could not do so). One consequence of that theory is that "a civil conspiracy is not now tenable because Plaintiff's evidence belies the notion that Defendants acted without a business motive, but purely out of malice." Id. Thus, there is no genuine issue of material fact as to this point and Count VIII should be dismissed.

Courts in Pennsylvania require that plaintiffs who allege civil conspiracy must plead some fact, "such as meetings, conferences, telephone calls or joint signatures" on relevant forms, or "allege facts inferring conspiratorial conduct." Petula v. Mellody, 588 A.2d 103, 107 (Pa. Cmwlth. 1991). In Petula, the court held that the plaintiff had failed to state a civil conspiracy claim where, although he alleged parallel conduct between defendants, he did not allege any facts from which one could infer conspiratorial conduct. Id. *See also*, Landau v. Western Pennsylvania Nat. Bank, 282 A.2d 335, 339 (Pa. 1971).

Burris' claim against St. Charles for civil conspiracy in Count VIII must be dismissed because he has not fulfilled pleading the legal elements necessary to state this cause of action.

First, Burris fails to plead any underlying tortious conduct on the part of St. Charles to support a conspiracy claim. There is no independent wrong or tort that would serve as a valid predicate cause of action. The only possible civil cause of action against St. Charles that might support a conspiracy claim is tortious

interference with contractual relations.  However, Burris has completely failed to allege or describe the elements of that tort as it might be applied to St. Charles in this case. Further, St. Charles cannot conspire to interfere with a prospective contractual relation in which <u>it</u> was the intended seller or contrac<u>tor</u> – i.e. St. Charles cannot interfere with itself.

Second, there is no allegation in Count VIII of a combination acting in concert for the <u>sole</u> purpose to cause harm to Burris.  *See* <u>Doltz</u>, *supra*. Unsupported and unrefined allegations of engaging in "secret negotiations" and/or "secret discussions" do nothing to advance a claim against St. Charles.  They fail to describe tortious conduct.  St. Charles is/was free to conduct any negotiations or discussions concerning the sale of the Parcel that it chose to entertain.[35]  St. Charles acted only as it stated in the Confidentiality agreement signed by Burris and set out to do from the very beginning of the process receive and/or vet any offer to purchase the Parcel as it saw fit and determined in its complete discretion. Further, as noted above, Plaintiff's theory that Main Line acted to advance its own business interests negates any allegation of malicious conspiracy.  *See* <u>Bro-Tech</u> and <u>Thompson Coal Co.</u>, *supra*.

Third, (and even more problematic), the Complaint has no factual allegations whatsoever to describe the overt act(s) done in pursuance of the

---

[35] In fact, Plaintiff/BCC conceded this point when they filed their "Amended *Lis Pendens*" in the State Court Action. *See* Exhibit "E" attached hereto.

common purpose (*See* Complaint ¶ 125). *See* <u>Petula</u>, <u>supra</u>.  Without factual

allegations with regard to meetings, conferences, joint signatures or telephone calls

to advance a conspiracy, the claim is properly dismissed.  <u>Id</u>.  Similarly, in <u>Grose</u>

<u>v. Procter  Gamble Paper Products</u>, 866 A.2d 437 (Pa. Super. 2005) the count of

civil conspiracy was dismissed for failure to state a cause of action because the

complaint was "totally devoid of any averments specifying either an unlawful act

or a lawful act carried out by unlawful means."  <u>Grose</u>, 866 A.2d at 441. The

complaint was dismissed because no overt act was identified or referenced in the

complaint. *See also*, <u>Vizant Technologies, LLC v. Whitchurch</u>, 2016 U.S. Dist.

LEXIS 2112 at *74-75 (E.D. Pa. Jan. 8, 2016) ("To withstand summary judgment

on a civil conspiracy claim, a plaintiff must produce evidence which would

establish that [defendants] acted in concert to commit an unlawful act or do a

lawful act by unlawful means, and that they acted with malice. Plaintiffs have

failed to do so. Instead, they merely assert (without citing to the record) that

defendants "combined and agreed with intent to defraud Plaintiffs and extort

money from them to engage in unlawful means, including fraud, misappropriation

of trade secrets, tortious interference and abuse of process." They support this

claim by citing to the complaint, which, as discussed above, does not contain facts

in which we may rely in deciding a motion for summary judgment.")

The fourth element of a civil conspiracy is that the individual conspired against must have suffered actual legal damages.  "It is the damage, and not the agreement itself, that is the gravamen of a civil conspiracy suit, and permits a recovery."  <u>Cohen v. Pelagatti</u>, 528 A.2d 657, 658 (Pa. Super. Ct. 1987). Therefore, the existence of identifiable damages, even if nominal, must be established by the facts alleged in support of the cause of action.  <u>Id</u>.  Where the harm alleged is either speculative (as in the case of Burris), or involves a threat of future harm only, a cause of action for civil conspiracy cannot be maintained.  <u>Id</u>. Here, Burris has not only failed to identify any actual legal damage suffered by him, he has failed to identify any damage that was proximately caused by St. Charles.

Accordingly, judgment should be entered for St. Charles with regard to Count VIII of Plaintiff's Complaint.

### 3.     The Count for "Constructive Trust and Permanent Injunctive Relief" Is Contrary to Law and Fails to State a Claim

Count IX continues Burris' fantasy of a partnership with Main Line to an extreme and seeks to impose a constructive trust that would require (1) Main Line to acquire the Parcel and to hold it in trust for Burris and for the phantom Burris-Main Line Joint Venture, and (2) Main Line to convey the Parcel to Burris and the Joint Venture "to avoid unjust enrichment."  (*See* Complaint ¶¶130-131).  The first

problem, of course, is that St. Charles is under no obligation whatsoever to sell the property to Main Line.  There is presently no agreement of sale between St. Charles and Main Line.  Secondly, St. Charles is the record owner of the land and has been since 1911.  St. Charles owes no fiduciary obligation to Burris and cannot be involuntarily required to transfer the Parcel to Burris or compromise its title by being ordered to hold the Parcel in trust just because Burris believes he has been "duped" by Main Line.

A constructive trust is "one created by equity to prevent unjust enrichment or to redress a wrong."  Huber v. Wagner, 284 Pa. Super. 133, 425 A.2d 456, 458 (Pa. Super. Ct. 1981).  "It exists whenever one holding title to property is subject to an equitable duty to convey it to another on the ground that he [or she] would be unjustly enriched if he [or she] were permitted to retain it."  Id.  The constructive trust arises more frequently in situations of "fraud, accident, mistake, duress or undue influence."  **It is an equitable remedy, not a separate cause of action**. Lerario v. Provident Life and Accident Ins. Co., No. 96-2100, 1996 U.S. Dist. LEXIS 13671, at *4 (E.D. Pa. Sept. 20, 1996). *See also*, Serafini v. Mariani, No. CV-08-0469, 2010 U.S. Dist. LEXIS 31819 *10-11 (E.D. Pa. Mar. 31, 2010) (summary judgment granted). Accordingly, Count IX should be dismissed.

Under Pennsylvania law, a court may grant the equitable remedy of the imposition of a constructive trust if property is wrongfully held due to the breach

41

of a confidential relationship.  <u>Yohe v. Yohe</u>, 353 A.2d 417 (Pa. 1976).  In this

case, however, as already established, St. Charles has held title to the Parcel for

more than 100 years and still holds the title.  There is no basis to impose a

constructive trust on the Parcel – Burris' speculation and conjecture that St.

Charles and Main Line have reached a written agreement for the sale of the

property, which St. Charles denies, and that such an agreement would violate some

fiduciary duty owed to Burris, is certainly not sufficient.  Moreover, Burris has

admitted the lack of a relationship between it and Main Line for purposes of

developing the Parcel to wit: "the parties were unable to create any potential

relationship to proceed in the development envisioned by the parties in the Burris-

Main Line Fiduciary Venture."  (*See* Complaint ¶70).

There is quite emphatically no basis upon which to impose a constructive

trust on the Parcel.  Furthermore, Burris has made no pleading nor a showing

whatsoever to warrant any consideration for "permanent injunctive relief."

Accordingly, Count IX should be dismissed as a matter of law and equity.

### 4.   Count X (Permanent Injunction) Fails to Plead an Entitlement To Any Injunctive Relief

Plaintiff's second Count IX [sic] (which will be referred to herein as Count

"X") is labelled "Permanent Injunction."   Nevertheless, in ¶¶ 136 and 137,

Plaintiff is requesting the court to enter a "<u>preliminary</u> injunction."  Since there are

different requirements that apply to a plea for a permanent injunction versus a preliminary injunction under applicable law,[36]  *see e.g.,* <u>Vizant Technologies</u>, 2016 U.S. Dist. LEXIS at * 77, this constitutes a material pleading error which, in and of itself, provides a basis for the court to dismiss this Count.

There are further problems.  Count "X" fails to set forth any factual allegation to support Plaintiff's otherwise bald accusation of a "conspiracy" between Main Line and St. Charles.  *See* Complaint ¶135.  Paragraph 135 is virtually incomprehensible insofar as it concerns St. Charles.  It fails to place St. Charles on notice of what wrongdoing is being asserted against it.  Rather, it uses the catch-all phrase: "all with the aid of and in conspiracy with Seminary." The question is "all" what?  For this reason alone, Count "X" should be dismissed for failing to state a claim upon which relief can be granted and judgment entered for St. Charles.[37]

In addition, this Count again relies upon the premise that a fiduciary relationship existed between Plaintiff and Main Line and that Main Line breached fiduciary duties—neither of which has the slightest credibility based upon the

---

[36] While state law applies to the substantive issues in a diversity action, <u>federal</u> law governs the standard for issuing a preliminary or permanent injunction.  *See* <u>Instant Air Freight Co., v. C.F. Air Freight, Inc.</u>, 882 F. 2d 797, 799 (3d Cir. 1989); <u>System Operations v. Scientific Games Development Corp.</u>, 555 F.2d 1131, 1141 (3d Cir. 1977).

[37] In addition, Count X should be dismissed because requests for injunctive relief are not "freestanding legal claims" and do not pass "muster" under Rule 12(b)(6) or 56 and "must be dismissed."  <u>U.S. Claims, Inc. v. Flomenhaft</u>, 519 F. Supp. 2d 532, 541 (E.D. Pa. 2007).

documentary evidence and neither of which can be properly alleged as demonstrated throughout this Memorandum. Plaintiff has not and cannot provide a basis upon which injunctive relief might be granted by the Court.

The Third Circuit pointed out the "yardsticks" for granting a preliminary injunction in the federal courts in Oburn v. Shapp, 521 F. 2d 142, 147 (3d. Cir. 1975):

> In measuring the district court's consideration of appellants' motions for preliminary injunctive relief, we recognize that the moving party must generally show (1) a reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured *pendente lite* if relief is not granted. Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court "should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."[38]

Thus, to support a preliminary injunction, the moving party must demonstrate that irreparable injury will occur if relief is not granted to maintain the status quo until a final adjudication on the merits can be made and that there is a reasonable probability of eventual success on the merits.  The Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 357 (3d. Cir. 1980).  The Third

---

[38] Similarly, under state law in Brayman Construction Corporation v. Pennsylvania Department of Transportation, the Supreme Court of Pennsylvania held that a preliminary injunction is appropriately granted where: (1) the movant possesses a clear right to the injunctive relief; (2) the injunctive relief prevents immediate and irreparable harm to the movant; (3) refusing the injunctive relief will result in greater harm than granting it; (4) the injunctive relief will not adversely affect the public interest; and (5) the injunctive relief is narrowly tailored and will restore the status quo as it existed before the defendant's alleged wrongful conduct.  Brayman Const. Corp. v. Penn Dep't of Transp., 13 A.3d 925, 935 (Pa. 2011).

5022696

Circuit has emphasized that more than a risk of irreparable harm must be

demonstrated. Id. The requisite for injunctive relief has been characterized as a

"clear showing of immediate irreparable injury," Ammond v. McGahn, 532 F.2d

325, 329 (3d. Cir. 1976), or a "presently existing actual threat; (an injunction) may

not be used simply to eliminate a possibility of a remote future injury, or a future

invasion of rights, be those rights protected by statute or by the common law."

Continental Group, 614 F.2d at 359,(quoting Holiday Inns of America, Inc., v.

B&B Corporation, 409 F. 2d 614, 618 (3d Cir. 1969)).

Evaluating each of these prerequisites for injunctive relief, Plaintiff fails

miserably to meet its burden and is not entitled to any injunction. For many of the

same reasons discussed above as to why Plaintiff's Complaint should be dismissed,

Burris has no clear right to relief and cannot satisfy the requirements for injunctive

relief.

The standard for the grant of a preliminary injunction is and always has been

that the movant must demonstrate that the right to relief is clear.  Furthermore, "[a]

preliminary injunction is an extraordinary remedy which is to be granted only

when each of these factors has been clearly established." Golden Triangle News,

Inc., v Corbett, 689 A.2d 974, 978 (Pa Cmwlth. 1997). See also, Novartis Con.

Health, Inc. v. J&J, 290 F.3d 578, 586 (3d. Cir. 2002) (Preliminary injunctive relief

is an "extraordinary remedy, which should be granted only in limited

45

circumstances.")  Burris cannot establish those factors. To the contrary, as the

court explained in <u>Chester</u> which applies equally here:

> it is well established that separate and distinct standards govern
> a request for preliminary injunction and a request for permanent
> injunction: a preliminary injunction turns on the presence of
> imminent, irreparable harm, while a permanent injunction is
> warranted if no adequate remedy at law exists for a legal wrong.
> <u>LARA, Inc. v. Dorney Park Coaster Co</u>., 116 Pa. Cmwlth. 548,
> 542 A.2d 220 (Pa. Cmwlth. 1988), *appeal denied*, 522 Pa. 580,
> 559 A.2d 40 (1989).

<u>Chester v. Chester Redevelopment Authority</u>, 686 A.2d 30, 35 (Pa. Cmwlth. 1996),

*app. denied*, 548 Pa. 650, 695 A.2d 787 (Pa. 1997).

Plaintiff's "right to relief" in this case, far from being "clear", does not exist,

as illustrated throughout this Brief. Rather, it is St. Charles who has the more

compelling case. Similarly, Burris' "need" for relief is no more "immediate", and

in fact, substantially less than St. Charles'. Finally, there is no irreparable harm:

even if any of Plaintiff's claims are found to have any merit, they can be

adequately compensated by an award of money damages. Plaintiff has not and

cannot satisfy any of the requirements in order to get injunctive relief.  This Count

should be dismissed and judgment entered in favor of St. Charles.

### 5.    Plaintiff's Claim for Punitive Damages Cannot Be Sustained

Pennsylvania law provides that a defendant must have engaged in

"outrageous" or "intentional, reckless or malicious" conduct to sustain a claim for

46

punitive damages. <u>Feld v. Merriam</u>, 485 A.2d 742, 747-48 (Pa. 1984); *see* <u>Boring v. Google, Inc.</u>, 362 F. App'x 273 (3d Cir. 2010) *cert. denied,* 562 U.S. 836 (Oct. 4, 2010). In order to establish the claim, it is essential that the Complaint identify the material facts supporting allegations of malicious, wanton, willful, or oppressive conduct. <u>Id</u>. Burris' Complaint here, however, fails to allege any conduct on the part of St. Charles that is even improper, let alone behavior that rises to the "outrageous" level.

To obtain punitive damages, the "pleadings must…allege facts sufficient to demonstrate evil motive or reckless indifference to the rights of others." <u>Great W. Life Assurance, Co., v Levithan</u>, 834 F. Supp. 858, 864 (E.D. Pa. 1993). Plaintiff's conclusory assertions that Defendants' conduct was "outrageous" unaccompanied by any allegations of evil motive or reckless indifference lack sufficient detail to warrant punitive damages. <u>Fedor v. Van Note-Harvey Assocs</u>, 2011 U.S. Dist. LEXIS 29446.

Rather, St. Charles was simply engaging in business as usual in receiving proposals relating to the purchase of the Parcel, requesting additional information as appropriate, discussing and vetting proposals – all of which it had every right to do and all of which was perfectly proper. Moreover, Burris has essentially admitted that he has no claim against St. Charles in the Amended *lis pendens*. Burris has in no way set forth a basis for a claim of punitive damages.

Burris never advised St. Charles that he had an exclusive arrangement with Main Line for purposes of submitting a proposal, nor did Burris provide St. Charles with any documentation to indicate the nature of their affiliation despite requests to do so. To the contrary, all of Burris' contacts with St. Charles, including proposals related to the Parcel, were made on behalf of BCC and/or Atrium. St. Charles had no reason whatsoever to believe that it could not entertain individual communications about the Parcel with <u>any</u> of the potential buyers. Burris' Complaint makes no factual allegation to the contrary.  Just as St. Charles had individual discussions and exchanged information with Burris, as the Complaint and documents make clear, so too it had every right to discuss the project with Main Line.

There are no allegations in the Complaint to support any inference that St. Charles' conduct *vis-à-vis* Burris was improper, let alone "outrageous" or "malicious."  There is simply no foundation in the Complaint and no evidence presented for a punitive damages claim against St. Charles and it should be dismissed.

5022696

## V.    CONCLUSION

For all of the foregoing reasons, Defendant Saint Charles Borromeo Roman Catholic Seminary respectfully requests that this Honorable Court enter Summary Judgment in its favor on Counts II, VIII, IX and X and dismiss Plaintiff's Complaint, with prejudice. St. Charles further submits that leave to amend the Complaint should not be given because in light of the overwhelming and uncontroverted evidence, including Plaintiff's admissions that there was no partnership with Main Line and that he has no claim against St. Charles, amendment would be futile.[39]  This is not simply a case where the pleading of additional facts might enable the claim(s) to survive but, rather, a case of legal

---

[39] *See* <u>e.g.</u>, <u>Anderson v. City of Phila</u>. 65 F. App'x 800 (3d. Cir. 2003); <u>Smith v. National Collegiate Ath. Ass'n</u>, 139 F. 3d 180 (3d. Cir. 1998).

insufficiency or really impossibility such that leave to amend would serve no useful purpose.[40]

Respectfully submitted,

Obermayer Rebmann Maxwell & Hippel LLP

/s/ Paige Macdonald-Matthes
Thomas A. Leonard, Esquire
Attorney ID No. 14781
Paige Macdonald-Matthes, Esquire
Attorney ID No. 66266
200 Locust Street, Suite 400
Harrisburg, PA  17101
(717) 221-1609 Telephone
(717) 234-9734 Facsimile

Dated: April 8, 2016                *Attorneys for Defendant, Saint Charles Borromeo Roman Catholic Seminary*

---

[40] Id.; *See also*, In re Burlington Coat Factory Sec. Litig. 114 F. 3d 1480 (3d Cir. 1997).

5022696

<u>**CERTIFICATE OF SERVICE**</u>

I, Paige Macdonald-Matthes, Esquire hereby certify that on the 8th day of April, 2016, a true and correct copy of the foregoing Memorandum of Law in Support of Motion for Summary Judgment was served via electronic filing, upon the following:

Paul R. Rosen, Esquire
Andrew J. DeFalco, Esquire
(sent via CM/ECF)
Counsel for Plaintiffs

David Smith, Esquire
David Dzengowski, Esquire
(sent via CM/ECF)
Counsel for Main Line Health System

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

/s/ Paige Macdonald-Matthes
Paige Macdonald-Matthes, Esquire
(Pa. Attorney I.D. No. 66266)
200 Locust Street, Suite 400
Harrisburg, PA 17101
(717) 234-9730 Telephone
(717) 234-9734 Facsimile
pmm@obermayer.com
*Attorneys for Defendant Saint Charles Roman Catholic Seminary*

51